G. A. McWILLIAMS, Appellant, v. DRAINAGE DIST. NO. 19 OF CALDWELL COUNTY, Respondent.

Kansas City Court of Appeals, June, 1920.

1. **DRAINAGE DISTRICT: Illegal Contract: Estimated Cost of Location and Construction: Report of Viewers.** A contract awarded by the officers of a drainage district on a bid which is not greater than the estimated cost of location and construction of the ditch is not void because the assessment against the land benefitted, provided by the viewers, through an error in computation is not great enough to meet the entire expense involved in the proceedings, the contractor being chargeable only with knowledge that his bid does not exceed the estimated cost of location and construction.

2. ————: **Contract Performed: Action for Breach.** A contractor who has fully performed his contract and whose performance has been accepted by the drainage district may recover judgment for the unpaid balance of the contract price although the drainage district through an error in the assessment has not sufficient funds to meet the entire expense. Whether such a judgment may be enforced is undecided.

3. ————: **Contract: Subsequent Oral Modification.** A contract with a drainage district which the statute requires to be written and recorded may not be modified by a subsequent oral agreement.

Appeal from Caldwell Circuit Court.—*Hon. Arch B. Davis*, Judge.

REVERSED AND REMANDED.

*E. C. Craig, O. J. Adams* and *W. T. Rutherford* for appellant.

*Greenwood & Cleveland* and *Paul D. Kitt* for respondent.

TRIMBLE, J.—Defendant is a Drainage District organized December 5, 1910, under the provisions of article 4, chapter 41, Revised Statutes 1909. By section 5583 thereof, it is a municipal corporation capable of suing and being sued; and under said article certain county officials are ex-officio officers of said District. Plaintiff is the contractor who, under a contract with said Drainage District, excavated the drainage ditch therein and built the bridges and farm crossings required thereby, and this suit is for the unpaid balance of the price named in the contract, said unpaid balance being the sum of $3226.69, and for which a general judgment against the District is asked. There is no controversy over the fact that the work was performed by plaintiff in accordance with the contract, nor is it disputed that plaintiff has not been paid the above named amount nor that the aggregate of the sums paid the contractor lacks that amount in order to equal the price specified in the written contract. The failure of the District to pay the balance of the contract price grows out of the fact that after taking out of the total amount of money raised by the District for *all* purposes the sum awarded as damages to the landowners and the sum expended for costs of location, attorneys fees, etc., the amount left to pay for *construction* of the improvement specified in plaintiff's contract is insufficient to pay the contract price to the extent of said unpaid balance. It is the contention of defendant that the contract was

illegal for reasons which will be hereinafter stated; that all of the funds provided for to pay for everything in the way of expense connected with the origination and establishment of the District and the drainage contemplated thereby, have been exhausted; that no additional funds can be raised by the District to pay such unpaid balance; and that by an oral agreement made after the contract had been entered into, the plaintiff agreed to do the work of construction for whatever sum was left on hand for that purpose. The reply denied this and objection was made to the introduction of any evidence to that effect, on the ground that such was an attempt to vary the terms of a written contract by parol proof and that too without any consideration to support it.

The case was tried before the court without a jury, and judgment went in favor of the defendant. The plaintiff appealed.

Upon reaching this court it was found that defendant in its answer had apparently raised a constitutional question by invoking certain specified sections of the Constitutions of the United States and of the State of Missouri; and plaintiff asserted that if a constitutional question was involved, jurisdiction to hear the appeal was in the Supreme Court. The matter being left thus by the parties to the cause, and this court realizing that if there were any doubt in regard to the matter the question should be determined by the Supreme Court, the case was transferred there. That court decided against the proposition that jurisdiction was with it and returned the case to this court, where it was argued and submitted at the last April Call.

The first question which should be disposed of is whether the contract was illegal, that is to say whether, at the time it was made, it was *void* because the District had *no power to make it*. If it was, then plaintiff's case is disposed of at once since in that event his cause of action is without contractual foundation. If we understand defendant's contention, it is not based upon any claim of invalidity in the steps taken to authorize

the contract, nor that the subject-matter or object to be accomplished is not perfectly legitimate and within the power of the parties to contract about. To obtain a clear perception of wherein its alleged invalidity is claimed to consist, it may be well to state some of the statutory provisions governing the making of such a contract and what was done in this case thereunder.

The ditch and drainage system, involved herein is located in two counties, Caldwell and Livingston, and the project was instituted, organized and carried out under the provisions of sections 5608, 5609 and 5610 and other sections of the above mentioned chapter. Under the provisions of these various sections it will be observed that up to a certain point the proceedings are carried along simultaneously, in each county as if there were but one District. Under section 5608 the county court of each county, upon reception of its petition for the ditch, appoints a preliminary viewer and they meet and appoint an engineer to assist them and view the line, of the entire proposed ditch and report to each county court whether the improvement is necessary or will be conducive to the public health, convenience or welfare, and also the best route for the ditch; they also examine and report what lands will be benefitted *in each county* and the relative degree of such benefit, and the estimated proportion of the work which shall be charged to each county. Under section 5609 if the several courts find in favor of making the improvements (as was done in this case) each court appoints two additional viewers who, with the first viewer and an engineer, proceed to stake out, estimate and apportion that part of the ditch apportioned to each county as if the ditch were located wholly within that county. The engineer selected by these viewers has charge of the construction of the entire ditch and is paid by each county in proportion to the work charged to each. And the proceedings necessary to the construction of said work are had in the same manner as if such ditch was located wholly in said county. That is to say, as we

understand it, after the work of these last named view-
ers has been done and their reports have been approved,
the proceedings necessary to the construction of the
work are conducted in each county separately, and sep-
arate contracts for the work in each county are made
for that portion of the ditch therein, as if the whole
ditch were in said county. The contract involved in this
suit has to do solely with the construction of the ditch
in Caldwell county, and the fact that the drainage sys-
tem lies in two counties has no material bearing on the
case and need not be stated were it not necessary in
order to make clear how it happens that the estimates
hereinafter referred to were made as they were, and
also to settle an apparent disagreement between coun-
sel as to what the record shows as to certain claimed
unapportioned benefits.

Under said section 5608 the viewers estimated the
proportion of the work to be charged to the lands in
each county and in their reports fixed the number of
acres in Caldwell county to be included in that district
at 1978, and the number of acres in Livingston county
to be included in that district at 1340 making total num-
ber of acres in the two districts amount to 3318. The
viewers apportioned 63 per cent. of the entire cost to
the lands in Caldwell county and 37 per. cent. of the
cost to the lands in Livingston county. As both of the
county courts found in favor of making the improve-
ment, viewers were appointed under section 5609 and
in their report they specified the same number of acres
and apportioned to the lands in each county the same
proportion of the cost, namely, 63 and 37 per cent. re-
spectively.

Section 5584 provides what these viewers shall do
and what they shall report in locating a ditch and in
making the assessment to pay for the improvement.
Among other things it provides that these viewers
"shall make and return a schedule of . . . lands
. . . that will be benefitted, damaged or condemned
by or for the improvement and the damage or benefit

to each tract of forty acres or less, and make separate estimates of the cost of location and construction and apportion the same to each tract *in proportion to the benefits or damages* that may result to each.''

Section 5589 provides that all lands benefitted by the improvements ''shall be assessed *in proportion to the benefits for the construction of the ditch.* Said section also provides that the estimate for *location expenses* ''shall include the amount of the costs reported by the viewers; a reasonable provision for properly inspecting and receiving the work, and all fees of officers, as herein provided, including making the record and executing all orders and process of the court and fees for all publications.'' It further provides that ''the county court may employ an attorney to assist in the work provided for by this article.''

Under said section 5584 the said viewers made separate estimates of the cost of location and the cost of construction. Their estimate placed the cost of ''engineering expenses, location and supervision'' of the entire improvement in both counties at $1985.025 and the ''printing and court expenses'' was fixed at the same sum, to-wit, $1985.025, making the total estimated cost of *location* in both counties amount to $3978.05; and the total cost of *construction* of the improvement in both counties, including excavation, bridges and private crossings, was estimated to be $28,184.60.

The viewers in their report made and returned a separate schedule of the damages for land taken and damages accruing to each 40 acre tract, or less; and the amount of the total expense for such damages accruing in both counties was fixed at $3755, of which amount the viewers in the totals of their report seem to have apportioned $2810 to the lands in Caldwell county. (We assume, without deciding it, that this is the correct method of apportioning this expense, that is, to make the lands in each county bear the expense of the lands taken and damaged in that county and not apportion the total expense for damages at the respective rates

of 63 and 37 per cent. as the other expenses were authorized to be divided.)   If this expense for damages is thus correctly apportioned, then this $2810 *plus* 63 per cent of $3978.05, the total location expense, or $2506.17, *plus* 63 per cent. of $28,184.60, the total construction expense, or $17,756.29 would aggregate the sum of $23,072.46 and be the total expense to be borne by the lands in Caldwell county, or the district now involved herein. This specific amount of $23,072.46, however, is not named in the report but is arrived at only by a calculation based on the 63 per cent of the cost of construction, $28,184.60 and location, $3978.05, as estimated for both counties and then adding thereto the $2810 apportioned to Caldwell county out of the $3755 for damages.

Said viewers also made and returned a schedule of the lands assessed with benefits resulting from the proposed improvement, and according to the totals of the amounts, the amount of such benefits so assessed against the lands in Caldwell county amounted to $22,631.25.

Section 5586 provides that when "damages are allowed persons, their benefits, if benefitted, shall be taken into consideration, and their assessment for benefits shall be reduced by the amount of their damages; and if not benefitted they shall be allowed and paid compensation for their damages."

The viewers, in making their assessments, schedules and reports, first assessed to each landowner damaged the amount of his damages for land taken and damaged, and then in the next schedule assessed benefits to all the lands in the districts and then, on paper, deducted the amount of the damages of each damaged landowner from the amount of his assessment, leaving the balance of his assessment of benefits as a *net* assessment thereof. These, together with the assessment of benefits against those not damaged, made a total *net* assessment, on the lands in Caldwell county, according to the schedule and report, of $20,283.75. As stated before, the report showed a total of 3318 acres in both

districts of which 1978 acres were in Caldwell county and 1340 in Livingston.

The viewers' report with their schedules was duly approved and confirmed without change by the county court of Caldwell county on the 9th day of September, 1911, pursuant to section 5588, Revised Statutes 1909. Under section 5594, the owners damaged were paid their damages in cash; and while the viewers schedules were made and reported as above stated, it seems that the damages were not in fact substracted from the benefits assessed against a damaged landowner and the difference levied upon his land, but his lands, as all the others, were assessed with the full amount of benefits and he was paid his damages in cash as above stated.

Under section 5595, the county court fixed a time and place for letting the contract, ordered the advertisement therefor made and directed the engineer to superintend the same and make the contract.

On October 17, 1911, the engineer reported that he had let the contract at public outcry, received bids therefor, and let the contract to plaintiff at his bid if $19,000, he being the lowest responsible bidder. The county court approved the report, ordered a contract entered into with plaintiff for the work at $19,000, and requiring of him a bond for the faithful performance of his work. This contract was duly executed on the 18th of October, 1911, and the bond was given, and both contract and bond were by the county court approved by an order of record on the 6th day of November, 1911. This contract was duly recorded, as required by section 5596.

There is no question but that the plaintiff performed the work according to plans and specifications. Upon completion of the work, the engineer, under section 5604, made final examination of it and on November 8, 1912, reported to the court that the work was all done in full compliance with the specifications as set forth in the contract and there was an unpaid badance due plaintiff of $4226.69. The county court, upon a hearing, and by an order entered of record, approved the report, accepted the work

and released plaintiff from all further responsibility on his contract. In this order the court further found that of the contract price of $19,000 plaintiff had been paid on July 2, 1912, $6091.52, on September 3, 1912, $8681.79, and on November 8, 1912, $1000, making a total of $15,773.31 paid "leaving a balance due said G. A. McWilliams of $3226.69." It is for this amount that suit is brought.

In proceedings of this character the benefits assessed constitute the source or fund out of which the money is derived to pay for the improvement. As above said, the benefits assessed in the viewer's report and schedules were placed at a total of $22,631.25. Some of the land-owners paid their benefit assessments in cash to the extent of $7475. The remainder of the $22,631.25 was raised by issuing bonds of the district to the amount of $15,156.25, of which all by $250 worth, or 14,906.25 were sold; and with the cash and proceeds derived from sale of bonds the district proceeded to pay the expense of the improvement.

Out of the fund the county court first paid the damages to the landowners. (This, as we have heretofore stated, amounted to $2810 on the lands in Caldwell county, but respondent in its brief says $2885 was paid out on this account while appellant asserts $3135 was paid out. This last, however, is the damages to land in both counties and evidently Caldwell county did not pay damages for Livingston county land. The peculiar thing about respondent's amount of $2885 is that we are unable to find it verified by the exhibit to which we have been referred for verification). However, we assume that the county court of Caldwell county paid only the damages in the amount they should have paid, to-wit, $2810. It also paid the expense of location, including the sum of $1050 attorneys fees. Consequently, when the final payment to the plaintiff, for constructing the ditch, came to be made, *there was not money enough on hand to finish paying the contract price.* And right here is where all the trouble between the parties comes in.

It seems that viewers and engineers in figuring up the assessment of benefit to meet the expenses of the improvement must have overlooked the fact that certain items of expense would have to be also paid out of the benefit assessment fund in addition to the damages and cost of construction. For, as against their total assessment of $22,631.25 to pay for the improvement, the percentage of the amount to be borne by the Caldwell county lands for construction and location, plus damages, is found upon computation, as hereinbefore stated, to be $23,072.46. In other words, although it is not manifest upon the face of the viewers' reports and the schedules, yet upon a careful analysis thereof, and taking the 63 per cent of the total cost of *location* and *construction* and adding to these two amounts the $2810 *damages* to Caldwell county lands (which as heretofore stated we assume should be borne by those lands alone and not 63 per cent of the total damage to-wit $3755) it will be found that these three amounts to-wit, $2810 damages plus 63 per cent of the total location costs, to-wit, $3978.05 or $2506.17 plus 63 per cent of the total cost of construction, to-wit, $28,184.60, or $17,756.29, aggregate $23,072.46 or $441.21 *more* than the aggregate of the benefits *assessed to meet the same.* It may be that this shortage was caused by regarding the total *damages* as being borne by the lands in the two counties in the same proportion as the other expenses, to-wit 63 and 37 per cent. For, if the damages were borne in this way, those in Caldwell county would have been 63 per cent of $3755 or $2365.65, instead of $2810. This is a difference of $444.35 and would have made the expense aggregate $22,628.11 or $3.14 *less* than the assessment provided therefor to meet it. No doubt the viewers must have made the error in some such way as this at first and then changed the expense of the Caldwell county damages wholly to the Caldwell county lands without noticing the effect it would have in the way of increasing the burden without having a sufficient assessment to meet it and without considering the district would be at expense for attorneys fees. As we have heretofore

said this insufficiency of the assessed benefits to meet the total expense of the improvement is not manifest upon the face of the viewers report but is only disclosed by an analysis and computation as hereinabove made. So far as the facts stated upon the face of the report are concerned it shows that the improvement in both counties, including cost of location, construction and damages, is estimated to be $35,927.65; that the number of acres in Caldwell county in the district is 1978, the number of acres in Livingston county is 1340, making an aggregate of 3318; that Caldwell county was to pay 63 per cent and Livingston county 37 per cent; that on 1978 acres in Caldwell county the total amount assessed for benefits was $22,631.25, the total of damages for right of way was $2190, for damages to land not taken $620 and *net* assessment $20,283.75; that on 1340 acres in Livingston county the amount assessed for benefits was $13,286.40, the total of damages for right of way $945, total net assessment $12,341.40. Making on the whole 3318 acres in both counties the sum of $35,917.65 assessed for benefits, the sum of $3135 and $620 or $3755 for damages and $32,625.15 for *net* assessment.

It is because of the fact that the $23,072.46 arrived at by analysis and computation as above stated, is less than the amount assessed for benefits on the lands in Caldwell county, to-wit, $22,631.25, that defendant contends the contract, made with the plaintiff for the construction of the improvement is illegal. That is to say, the contention is that it is at least illegal as to all amounts which, if paid to plaintiff under his contract, would make the entire cost of the improvement in Caldwell county, including attorneys fees, etc., exceed the amount of benefits assessed therefor, to-wit, $22,631.25.

Plaintiff, however, contends that the contract price of $19,000 did not exceed the "estimated cost of location and construction" and that this is the only limitation placed by the statute, section 5596, which says: "No bid shall be entertained which exceeds the estimated cost of loca-

tion and construction." The viewers report shows the estimated cost of construction to be as follows:

| | |
|---|---:|
| Excavation ............................ | $24984.60 |
| Bridges ............................... | 2000.00 |
| Crossings ............................. | 1200.00 |
| Right of Way damages ................. | 3755.00 |

| | |
|---|---:|
| Making a total of | $31939.60 |

There being 3318 acres in the two counties, the average cost of construction per acre would be $9.625, and there being 1978 acres in Caldwell county, the estimated cost of construction to be borne by the lands therein would amount to the sum of $19,038.25. Or, if the expense of construction be apportioned to the Caldwell county lands according to the rate fixed by the viewers, to-wit, 63 per cent, then the estimated cost of construction to be borne by the Caldwell county lands would amount to $20,121.94.

The cost of location in both counties was estimated, in the viewers report, to be $3978.05 and the average cost per acre on 3318 would be not quite $1.20 per acre, but at that even figure the 1978 acres in Caldwell county would be required to bear an estimated cost of location of $2373.60. This last named sum added to the $19,038.25 would make the "estimated cost of location and construction" in Caldwell county, amount to $21,411.85. Or if the estimated cost of location for Caldwell county be arrived at by taking 63 per cent of the total estimated cost of location, to-wit, $3978.05, the estimated cost of location for Caldwell county would be $2483.77, which, added to the $20,121.94, the estimated cost of construction arrived at in that way, would make the "estimated cost of location and construction" in Caldwell county amount to the sum of $22,605.71. This last named amount is less than the amount assessed for benefits on the Caldwell county lands, to-wit, $22,631.25. Or, if the former method of calculation be adopted the estimated cost of location and construction in Caldwell county, to-wit, $21,411.85 is $1219.40 less than the $22,631.25 assessed for benefits on the Caldwell county lands.

And figured on this basis the contract price of $19000 is not only $38.25 *less* than the estimate cost of construction in said county but is $2411.85 *less* than the estimated cost of "location and construction" of the improvement in said county. If the estimated costs are figured on the other basis, the contract price is still smaller in comparison. So that, upon the face of the report, the plaintiff's bid and contract price, which was accepted and under which he did the work in accordance with the contract (and which work was also accepted), did not violate but came within the only provision of the statute limiting his bid, namely, that the bid should not exceed "the estimated cost of location and construction."

This being so can it be said that the contract is absolutely void so that it will not support a cause of action wherein a *judgment* is sought for the *debt* owed by that contract, merely because the viewers, in assessing the benefits to meet the expenses of the improvement, *commit some error* whereby the district does not raise sufficient funds to pay all of the expenses which the district will incur? When the contractor comes to bid on a piece of work of this character, must he know at his peril that all the calculations of the viewer are correct and that they have made ample provision for funds to meet every expense the district may have to pay? The statute says no bid shall be entertained which exceeds the estimated cost of location and construction. This is all that the contractor need look to in addition to seeing that the various statutory steps are taken to authorize a contract. There is no question but that the statutory steps were taken which fully authorized a contract; and when that is the case, then the only statutory requirement to be observed is that the bid shall not exceed the *estimated* cost of location and construction. As said in Wentink v. Board, etc., of Passaic County, 48 Atl. (N. J.) 609, "it would be too much to hold every contractor with a public body to a scrutiny, at his peril, of the corporate proceedings. All that he need look to is the power to make the ostensible contract. [Bigelow v. City of Perth Amboy, 25 N. J. Law, 297; Knapp v. City of Hoboken, 30 N. J.

Law, 391; Tappan v. Long Branch Comm., 59 N. J. Law, 371; Moore v. Mayor, etc., 73 N. Y. 238.]''

We think, the steps taken being regular, and the contract price being within the estimated cost of location and construction, that was all the plaintiff had to look out for. It may be that at the time the contract was made and and approved, there was not money enough provided for to pay the attorneys fees and other expenses the district would be called upon to pay.; but the contract, having the proper statutory steps to support it and being within the estimated limits, was legal. There was then money enough to pay it. But, on account of some omission or oversight, provision was not made for enough money to meet all expenses, and hence the contract becomes illegal because other debts are to be paid and there is no money to pay plaintiff though his bid was within the estimate and he has fully performed his contract. Why should plaintiff's be illegal any more than the others? The work is done and has been accepted. What right has the district to say the contract is now illegal and defeat an adjudication of the debt thereon? We do not think the contract was rendered void. [State ex rel. v. Wilson, 216 Mo. 215; East St. Louis v. East St. Louis Gas, etc., Co., 98 Ill. 415, 428.] It was a legal contract and when performed its breach will support a cause of action for a judgment thereon. [Hitchcock v. Galveston, 96 U. S. 341.]

It is no doubt true that the foundation of the right to levy assessments is the particular benefit received by the land assessed. [9 R. C. L. 653; 1 Paige & Jones on Tax by Assessment, sec. 11; Elmore v. Drainage Comrs., 135 Ill. 269; Donnelly v. Decker, 58 Wis. 461; Thomas v. Gains, 35 Mich. 155.] And it is also true that the levy for the cost of improvements of this character is not merely apportioned to the lands according to the benefits but cannot exceed the benefits in legal theory derived therefrom. [Martin v. District of Columbia, 205 U. S. 135; Voigt v. Detroit City, 184 U. S. 115; 2 Paige & Jones, chap. 13; 9 R. C. L. 653, sec. 44.] In this case,

however, the viewers are required to apportion the cost of location and construction in proportion to the benefits; and after estimating the damages and costs of construction they make an assessment of benefits upon all the lands in the district amounting to $35,927.65 and of this amount $22,631.25 are assessed to the lands in Caldwell county which is $3.14 more than the total cost for the county if the per cent as to damages had been carried out as in the other cost, but which the viewers did not do, and omitted to increase the assessment on the Caldwell county lands accordingly. Does the fact of this inadvertence and error render the contract which plaintiff obtained null and void, so that he cannot obtain an adjudication of his debt under that contract? We think not. [State ex rel. v. Holt County, 135 Mo. 533, 545-6; Barnes v. Pikey, 269 Mo. 398, 408.] The question whether he will be entitled to *enforce* his judgment is another question which will come up in another suit. [Northern Pacific R. Co., 12 L. R. A. (N. S.) 121; Heman Construction Co. v. Wabash R. Co., 206 Mo. 172, 188.]

The case of State ex rel. v. Redman, 270 Mo. 465, does not, as we understand it, decide the question of what effect the statute of 1913, Laws 1913, p. 274, permitting an amended or corrected assessment, would have upon this case where the statutory authority for an amended or corrected assessment is in existence before the power to make a second assessment is invoked. In the Redman case the power to make such second or amended assessment was attempted to be made before there was any statutory authority therefor.

Over the objections and exceptions of plaintiff defendant introduced the evidence of a witness who testified, in effect that after the contract and bond had been executed and approved by the county court and it had adjourned, he called plaintiff's attention to the omitted items of cost whereby the assessment apportioned to the Caldwell county lands would not equal the entire cost of the project and that thereupon plaintiff said he "would have to hold the sack" or in other words do the work for

whatever was left. This was not admissible. It was an attempt to vary by parol a written contract. It was required to be not only written but recorded. [Sections 2778-79, 5595-96.] Such contracts cannot be modified by parol agreement. [9 Cyc. 599; Rucker v. Harrington, 52 Mo. App. 481, 487; Warren v. Mayer Mfg. Co., 161 Mo. 112, 120.] Besides, the contract was fully complete in every way and there was no consideration for any such promise. [Lingenfelter v. Wainwright Brewing Co., 103 Mo. 578.] In addition to this, it was not made to the opposite party to the contract, the engineer, nor was it reported to the court for approval and confirmation. Besides, the subsequent orders of the county court finding the balance due plaintiff is in direct contradiction of any such arrangement and shows that both sides were contruing the written contract as being in force according to its terms. [Tetley v. McMurray, 201 Mo. 382, 394.]

As we view this case, the judgment should ve reversed and the cause remanded with directions to enter judgment for plaintiff for $3226.69 and costs of suit. It is so ordered. All concur.