THE STATE ex rel. FRANK W. ASHBY, Prosecuting Attorney of Livingston County, v. MEDICINE CREEK DRAINAGE DISTRICT et al., Appellants.

Division Two, December 1, 1920.

1. **DRAINAGE DISTRICT:** Bridges. Under the Circuit Court Drainage District Act of 1913 the burden of building bridges over drainage ditches where they cross public highways rests upon the drainage district, and not upon the county.

2. ———: ———: Corporation: Amendment to Statute. Section 5513, Revised Statutes 1909, required all bridges belonging to any corporation, or needed over a public highway, or right of way of any corporation, to be built by such corporation; and in the case of State ex rel. v. Chariton Drainage District, 252 Mo. 345, it was ruled that, under that statute, the duty of building a bridge over a drainage ditch intersecting a public highway was imposed on the county, on the theory that a county is a public corporation. But to Section 30 of the Act of 1913, relating to building such bridges, was added the proviso that "the word corporation used in this section shall not apply to counties," and those words swept away the foundation upon which the Chariton Drainage District case and subsequent cases following it were made to rest, and relieved the county of the burden of building such bridges.

3. ———: ———: **Burden at Common Law.** At common law the burden of building a bridge rests upon the individual whose act made its construction necessary; and as the Act of 1913 does not say that either the county or the drainage district shall build a bridge over a ditch where it crosses a public highway, but does say that such a bridge must be built within a designated time, the common law places the burden of building it upon the drainage district which constructs the ditch that intersects the public road.

4. ———: ———: **No Damages.** Section 30 of the Drainage Act of 1913 in declaring that "all drainage districts shall have full authority to construct and maintain any ditch or lateral provided in its plan for reclamation across any of the public highways of this State, without proceedings for the condemnation of the same, or being liable for damages therefor," does not relieve the drainage district of the burden of building bridges across such highways.

5. ———; ———; **Levying Taxes for Construction..** The Drainage Act of 1913 confers upon drainage districts organized under it power to levy taxes for the construction of bridges over its ditches where they intersect public highways.

6. ———: ———: **Exception to General Statute.** The Drainage Act of 1913, requiring drainage districts organized under it to construct bridges over ditches constructed by it where they cross public roads, is an exception to the general law (Art. 3, Chap. 102, R. S. 1909) confining to the county the duty of building bridges on public highways.

7. ———: ———: **According to Engineer's Plans: Correction of Judgment on Appeal.** Bridges constructed by a drainage district over its ditches where they cross public roads are required to be constructed according to the plans, specifications and orders made and approved by the chief engineer of the drainage district; and a judgment in mandamus brought against the district, which requires them to be approved by the county engineer, is to that extent erroneous, but it is such error as may be corrected on appeal without remanding the cause.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis*, Judge.

Affirmed.

*Paul D. Kitt* and *Perry S. Rader* for appellant

(1)  The statutes nowhere place upon a drainage district organized under the Circuit Court Drainage Dis-

trict Act of 1913, the obligation to build or enlarge or the burden to pay for bridges over its drainage ditches where they cross public roads, but on the contrary specifically state that "all drainage districts shall have full authority to construct and maintain any ditch or lateral provided in its 'plan for reclamation,' across any of the public highways of this State, without proceedings for the condemnation of the same, or being liable for damages therefor" and therefore said petition stated no cause of action for the writ of mandamus compelling the appellants to build and construct said bridges, and their demurrer thereto should have been sustained. Laws 1913, pp. 232 to 267, secs. 26 to 30, and especially Section 30; State ex rel. McWilliams v. Drainage District, 269 Mo. 444; State ex rel. Caruthers v. Drainage District, 271 Mo. 429; State ex rel. Jones v. Drainage District, 252 Mo. 345. (2) The changes in and modifications of the prior law (Art. 1, chap. 41, R. S. 1909), as that law was construed by this court in the cases cited above, by the law under which Medicine Creek Drainage District was organized (Laws 1913, pp. 232 to 267), while not many or material, make it more clear and plain that the costs of constructing bridges over drainage ditches crossing public highways must be borne by the county or by some other public agency than the drainage district. Sec. 30, Laws 1913, p. 250. (a) The statute (Section 30) says, that "all drainage districts shall have full authority to construct and maintain any ditch or lateral provided in its 'plan for reclamation,' across any of the public highways of this State, without proceedings for the condemnation of the same, or being liable for damages therefor." The words "without proceedings for the condemnation of the same, or being liable for damages therefor," were not in Section 5513, R. S. 1909, upon which the aforesaid decisions were based, but all the rest of the language above quoted is in said Section 5513, in more numerous words, but not in larger meaning. The words, "without being liable for damages

therefor," are absolutely new. They are not only very comprehensive words, but they serve to remove the doubt entertained by lawyers for a time as to whether there was an implied intention imbedded in Section 5513 and the other sections of the article of which it forms a part, that the costs of bridges over ditches crossing public roads were chargeable to the drainage district. If the drainage district is not liable for damages for cutting through a public road with its ditches, it cannot be charged with the costs of bridges over such ditches. The largest possible element of damages is the cost of building the necessary bridges. (b) The words "without being liable for damages therefor" used in Section 30 of the Act of 1913, are found in the section pertaining to bridges and in the only section of the act that is entirely given over to the subject of bridges. They therefore have reference to bridges. They were meant to include the costs of bridges over ditches which all drainage districts are authorized to construct across any of the public highways of this State. (c) The words "without being liable for damages therefor," used in said Section 30, cannot be limited to and made to qualify only the words "without proceedings for the condemnation of the same." They do mean that a drainage district is not liable in damages for the mere cutting of a public road with a ditch, as if that were a taking of private property for a public use, or as if it were a temporary interference with public travel; but it was not necessary to use them for any such purpose, and they mean far more than that. The public (whether it be the county or the State) has only a public easement in a public road. The land constituting a public road has already been devoted to a public use—so devoted when the public road was established. It is not necessary to resort to further condemnation proceedings to devote it to a further public use. The use of a part of it for a drainage ditch is a further public use. The Legislature had the right to authorize its appropriation to a different public

use, such as a drainage ditch. State ex rel. Caruthers v. Drainage District, 271 Mo. 435. (d) Not only are the words "without being liable for damages therefor" new in the Act of 1913, and therefore reenforce the conclusion reached in the above decisions that the drainage district is not required under Section 5513 to construct bridges over its ditches where they cross public roads, and furnish a new and better reason for a like decision in this case than was then before the court, but the Legislature in framing the Act of 1913 seemed to studiously labor to omit from it every clause to be found in the prior statutes which might seem to lend any encouragement to any one that its intention was to place the burden of building such bridges on the drainage district. Thus Section 5511, R. S. 1909, stated that the board of engineers, in making up their report and plan for drainage and reclaiming the lands of the district, shall also report the location of any and all public highways which may be crossed by the right of way of any ditch, levee or other improvement planned for said ditch, "together with the estimated cost of bridges and approaches across said highway and made necessary by reason of the aforesaid improvements and drainage." But while all the other valuable provisions of this section were retained somewhere in the Act of 1913, in almost the same words, the foregoing words quoted were omitted therefrom and no similar words are to be found therein. The natural inference from their omission is that the framers of the Act of 1913 did not wish it to contain any words that even squinted at the duty of the drainage district to build such bridges. But the better reason was that neither act put the obligation upon the district to either build or pay for such bridges, and therefore there was no necessity for the engineers to estimate the cost thereof. (e) The proviso attached to the end of said Section 30, reading, "Provided, however, the word corporation used in this section shall not apply to counties," does not in any wise relieve the county of

the duty to build or enlarge the bridges over the ditches which the drainage district is authorized to construct across a public road. It refers simply to notice, and relieves the drainage district of the duty of giving a county notice that a bridge "is needed over a public highway." Other corporations must be notified. But if the ditch crosses a public road, thereby making the construction or the enlargement of a bridge necessary, the proviso does not require notice to the county, for the simple reason that Section 10490 and other sections of Chapter 102, R. S. 1909, require the county court to take notice "that a bridge is necessary" and to proceed to build it. No court is entitled to notice of a statutory duty. In the minds of some men a county is a "corporation," and some judicial decisions and text-writers either say or intimate that a county is at least a municipal corporation, and it was to make it clear that a county was not included in the corporations mentioned further up in Section 30 that this proviso was added. (3) In construing the Act of 1913 the fact that it nowhere gives to a drainage district or to its board of supervisors any power to levy taxes for the construction or enlargement of bridges, or to expend the revenues of a drainage district for any such purpose, should be considered; for such fact is a persuasive and a strong argument that the Legislature did not intend to place the burden of paying for the costs of bridges upon the drainage district. State ex rel. v. Drainage District, 269 Mo. 462; Rigney v. Fischer, 113 Ind. 313. (4) Statutes like Section 30 of the Act of 1913 apply to bridges over artificial streams as well as to bridges over natural streams. Lake Shore Ry. Co. v. Clough, 242 U. S. 380; Sec. 3049, R. S. 1909; Railway v. Minneapolis, 232 U. S. 436, 441; State ex rel. v. Drain. Dist., 269 Mo. 463; C. B. & Q. Ry. v. Drainage Commrs., 200 U. S. 561. (5) The statutes put upon the county (or special road district, or in part upon townships in counties having township organization) the duty of building bridges and paying for

the same. Article 3, Chapter 102, R. S. 1909, covers the whole subject of bridges, and Sections 10490 and 10486, found therein, when read together, mean that when a bridge is necessary and costs fifty dollars or more, the county court is required to build it. State ex rel. v. Chariton Drainage District, 252 Mo. 363; State ex rel. McWilliams v. Drain. Dist., 269 Mo. 462. (a) But defendants are not required to demonstrate that the duty rests on the county to build the bridges. In mandamus relator must place his finger on the exact words that impose a specific duty on respondents, and there is no statute that specifically says the drainage district shall build or pay for bridges over its canals where they cross public roads, or railroads or toll roads. Heffner v. Counties, 193 Ill. 439; State ex rel. v. McIntosh, 205 Mo. 607; Dunklin County v. Dist. Court, 23 Mo. 454; State ex rel. v. McAuliffe, 48 Mo. 114; State ex rel. v. Brown, 172 Mo. 382. (6) Relator has misconceived his cause of action. If Livingston County has any cause of action whatever against the Medicine Creek Drainage District it is one for damages for injury to the roads. The drainage ditches have already been cut across the public roads. A bridge is a part of a public highway. A bridge is just as much a part of a public road as is the earth or macadam on which horses travel or vehicles are hauled. 9 Corpus Juris, 422 (2); 4 R. C. L. 3. The statute requires the county court to keep bridges in repair. Sec. 10501, R. S. 1909. There is no intimation in the Act of 1913, that it is the duty of a drainage district to maintain bridges or keep them in repair. Whatever injury the cutting of the ditches across a public road did is complete. The measure of damages would be the necessary cost of constructing necessary bridges. That damage can be ascertained in dollars and cents. Mandamus "will not lie where any other legal remedy is open to the relator." Board of Supervisors v. Board of Supervisors, 111 Mich. 105; Eyke v. Lange, 104 Mich. 28; Harrison School Township v. McGregor, 96 Ind. 188.

It will not issue unless the party asking it has a clear right and no other specific remedy. Williams v. Cooper Court, 27 Mo. 225; State ex rel. v. Newman, 91 Mo. 445. (7) The petition does not state a cause of action in mandamus. Even if the statutes mean that a drainage district must construct or pay the cost of constructing bridges over its ditches where they cross public roads, the petition must state (a) that the defendants have on hand a fund available for such purpose or the means of providing it, and (b) that the "plan for reclamation," if such bridges were not included therein as a part of the drainage works and improvements to be constructed, had been reformed, or were by the petition sought to be reformed, so as to include such bridges. State ex rel. v. Commissioners, 39 Kan. 700; State ex rel. Watkins v. Macon County Court, 68 Mo. 29; State ex rel. v. Short-ridge, 56 Mo. 126; State ex rel. v. Cottengen, 172 Mo. 129; People v. Commissioners, 7 Wend. (N. Y.) 474; Pettis County v. Kingsbury, 17 Mo. 479; Kingsbury v. Pettis County, 48 Mo. 210; Faris v. State, 46 Neb. 857; Travis v. Skinner, 72 Mich. 152; State ex rel. v. Wood County, 72 Wis. 629, 637; Board of Supervisors v. People, 222 Ill. 9.

*Frank W. Ashby* for respondent.

(1) The difference between the drainage law known as the Circuit Court Act, Secs. 5496 to 5541, R. S. 1909, and the Act of 1913, pp. 232 to 267, are, that the old law required the counties to construct bridges over high-ways crossed by drainage canals, but the new law is just the reverse, that is, under the Act of 1913, the duty is put upon the drainage district instead of the counties to construct such bridges. (a) The provision or the words in the Act of 1913 "without proceeding for the condemnation of the same, and without being liable for damages therefor" was not in the old drainage law, and it is clear from a reading of the act that it was the

intent of the Legislature that no damages should accrue
to the State or the county, for damages caused by drain-
age districts in crossing highways. The reason for this is
that it was the purpose in adding the words that the
drainage district could cross said highway "without
proceeding for the condemnation of the same, and with-
out being liable for damages therefor," that the drain-
age district should construct necessary bridges and re-
store the highway to its former condition. (b) So, too,
the proviso attached to the end of Section 30, reading,
"Provided, however, the word corporation used in this
section shall not apply to counties," clearly changes the
obligations of the county to construct these bridges and
placed that duty upon the drainage district. In con-
struing this same section without the proviso, this court
has held, that the counties were intended to be includ-
ed in the word "corporation" as used in said section,
and, therefore, it was the duty of the counties to con-
struct these bridges. The holding of the court was solely
and absolutely upon this section of the law. State ex rel.
v. Drainage District, 252 Mo. 345. (2) Respondent con-
tends that bridges needed over highways in the district,
are as much a part of the project as the canal itself, and
that the district has the power to levy a tax to pay for
the same. (3) Appellant misconceives the action pur-
sued by respondent in this cause. The action is not that
of mandamus, but strictly speaking that of a mandatory
injunction. It is true in mandamus that the relator would
be compelled to put his finger on the statute that entitled
him to relief; but not so in a mandatory injunction,
which is entirely in equity. Safe Deposit Co. v. Kennett
Estate, 101 Mo. App. 394; Walther v. Cape Girardeau,
166 Mo. App. 478; Schubach v. McDonald, 179 Mo. 194;
Camden Special Dist. v. Willow Drainage Dist., 199 S.
W. 716. (b) While it is true possibly that in the prayer
of the petition it is not specially asked that appellant be
required to prepare necessary plans and specifications
for these bridges, and be required to make a tax levy

sufficient to pay the cost thereof; yet the prayer of the petition closes by asking general relief, "and for such other orders and further relief as the court may deem meet and just in the premises." If then, it is necessary for a tax levy to be made, under the rule, the court has power to so decree. State ex rel. v. Drainage Dist., 269 Mo. 444. (c) But it is not necessary for the court to so decree, because to affirm the judgment, which should be done, would compel the appellant to construct the bridges at its expense, and it now has, and has always had, and will continue to have, ample power to make levies, and additional levies, to complete the work and improvements. Sections 18 and 45, Act 1913. (4) By the common law, it is the duty of landowners or others who cut a ditch or canal across a public highway to restore the same to as good a condition as it was, even though it is necessary to construct and maintain bridges at the expense of the party constructing said canal. Independence v. Mo. Pac., 86 Mo. App. 585; Canal Co. v. County Com., 40 Am. Rep. 430; Conewango v. Shaw, 31 App. Div. 354, 52 N. Y. Supp. 327; State ex rel. v. Lake, N. R. & I. Co., 63 Kan. 394, 65 Pac. 681; Venard v. Cross, 8 Kan. 272; Haines v. People, 19 Ill. App. 354; Drainage District v. Biggs, 134 Ill. App. 239; Highway Commrs. v. Drainage District, 246 Ill. 388; People v. Fenton & T. R. Co., 252 Ill. 372; Dygert v. Schneck, 23 Wend. 446, 35 Amer. Dec. 575; Durton Township v. Tuttle, 300 Ohio St. 68; West Bend v. Mann, 59 Wis. 69.

*Frank W. McAllister,* Attorney-General, and *John T. Gose,* Assistant Attorney-General, *amicus curiae.*

Under the Drainage Law of 1913, counties cannot be held liable for the cost of constructing a bridge across an intersected highway, because the General Assembly has provided that counties are not to be considered as corporations within the meaning of that term as used in Section 30 of said law, which provides how all bridges contemplated by the Act shall be built, and, only in the case of corporation, does such section permit the drain-

age district to pass on the burden of building such a bridge to another. Sec. 30, Laws 1913, pp. 250-251; State ex rel. v. Chariton Drainage District, 252 Mo. 345; State ex rel. v. Little River Drainage District, 269 Mo. 444, 271 Mo. 429. Beyond question it appears that the reason why this court held the county liable, under the drainage law of 1909 and 1911, for the cost of constructing a bridge over a highway, was that the county was a corporation within the meaning of that term as used in Sec. 5513, R. S. 1909, and such section in "plain, unambiguous and positive language" provided that when a corporation failed to construct or enlarge such bridge, the drainage district might do so at the expense of the corporation, and sue the corporation, if necessary, to recover such cost. Section 30 of said act provides how bridges shall be built. It is to be noted that this section includes "all bridges contemplated by this act." Then follows the proviso that the word "corporation" as used in said section, shall not apply to counties.

WILLIAMSON, J.—The State at the relation of the Prosecuting Attorney of Livingston County, brought this proceeding against the Medicine Creek Drainage District and the board of supervisors of said district, for a mandatory injunction requiring the district to build and maintain bridges upon certain named public highways in Livingston County at all points where said highways were, or were about to be, intersected by the drainage ditches of said district. Relator prevailed in the trial court, and the district has duly appealed.

The Medicine Creek Drainage District was organized in 1916, under the Act of 1913 authorizing the incorporation of drainage districts by a decree of the circuit court. [Laws 1913, pp. 232 to 267.]

I. Appellant contends that the Act of 1913 does not place upon drainage districts the burden of building Statutes, bridges over ditches across public highways, and insists that that expense shall be borne by the county.

Many, if not all, of the questions presented have been decided in this court in other cases, but since those decisions were rendered, the statutes relating to drainage districts have been amended in certain particulars, with the result, as relator claims, that those decisions do not now control. In 1913 the Legislature repealed Article I of Chapter 41, Revised Statutes 1909, and various amendments thereto, and substituted the Act of 1913 in lieu thereof. The Drainage Statute of 1909 had been construed by this court upon the proposition here involved in three cases, and in each instance we had held that the law imposed the burden of building bridges over drainage district ditches upon the county. [State ex rel. v. Chariton Drainage Dist., 252 Mo. 345; State ex rel. McWilliams v. Little River Drainage Dist., 269 Mo. 444, and State ex rel. Caruthers v. Little River Drainage Dist., 271 Mo. 429.] How far these decisions are now controlling authority in this case, depends upon the materiality of the changes made by the Act of 1913 in the statute law on this topic as it stood in 1909. It hence becomes necessary to compare the two statutes and note the changes which have been made, and then to determine the effect of those changes. The general purpose of the two statutes was the same, and many of the sections of the drainage laws of 1909, supra, have been carried into the Act of 1913 with the same headings and with little or no change in verbiage—a fact which facilitates comparison. We will confine our comparison strictly to the topic in hand, to-wit, bridges. The first section of the statutes of 1909 relating to bridges is Section 5503, which is as follows:

"All bridges in said district across any drain, ditch, canal or excavation, shall be built according to, and in compliance with the plans, specifications and orders made or approved by the chief engineer of the district. Any owner of land within the district may, at his own expense and in compliance with the terms and provisions of this section, construct a bridge across any drain, ditch,

canal or excavation in said district, The board of supervisors shall, wherever necessary, at the expense of the district, construct a convenient roadway or crossing over and across any levee or embankment in said district.''

The 1909 statutes then provide for the appointment of a board of supervisors, and by Section 5511 for the appointment of a ''board of engineers'' for each district, after which Section 5511 proceeds as follows:

''The said 'board of engineers' shall make a complete topographical survey of the said district and submit the same to the board of supervisors with maps and profiles of said survey and a full and complete plan for drainage and reclaiming the lands in said district from the overflow of or damage by water, or floods; and also, the physical characteristics and location of any right of way, roadbed, bridge or bridges and other property or improvements in said district belonging to or under the control of any railroad company; and shall also report the location of any and all public highways which may be crossed by the right of way of any ditch, levee or other improvement planned for said district, together with the estimated cost of bridges and approaches across said highway and made necessary by reason of the aforesaid improvements and drainage.''

The pertinent portion of the next section relating to bridges (Sec. 5513, R. S. 1909), omitting matter not material to this question, is as follows:

''Said board of supervisors shall also have the power to construct or enlarge or cause to be constructed or enlarged, all bridges that may be needed in or out of said district across any drain, ditch, . . . public highway or railroad right of way . . . and, further, shall have power to remove any bridge . . . in or out of said district, which may be in the way of any drainage . . . works . . . of said district. . . . All bridges contemplated by this section shall be built according to and in compliance with the plans, specifications and orders made or approved by the chief engineer of the district:

*Provided, however,* that if such bridge shall belong to any corporation, or be needed over a public highway, or right of way of any corporation, the secretary of said board of supervisors shall give such corporation notice.

. . . A failure to construct or enlarge such bridge within the time specified in such order shall be taken as a refusal to do said work by said corporation, and thereupon the said board of supervisors shall proceed to let the work of constructing or enlarging the same at the expense of the corporation for the cost thereof.''

The substances of these sections has been incorporated into the Act of 1913.

In each of the three cases above cited, it will be noted that it was held that the cost of building bridges over public highways in or out of drainage districts, was imposed upon the county in which the bridge was located.

Corporation. In the first case (State ex rel. v. Chariton Drainage District, 252 Mo. 345) this court construed Section 5513, supra, to impose the cost of building bridges upon the county, not because of any plain and pointed statement in the statute to that effect (for the statute contains no such statement), but because of the proviso in that section to the effect that ''if such bridge shall belong to any corporation, or be needed over a public highway,'' then the bridge shall be built by or at the expense of such corporation. A county is a public corporation, of course (14 C. J. 74), and upon that idea the decision in the Chariton Drainage District case is plainly based. That decision was handed down July 10, 1913. The opinion affirmed the judgment of the lower court. It is argued that when the General Assembly of 1913 met it was a matter of common knowledge that under the drainage laws as they then stood, the cost of building bridges made necessary by the cutting of drainage ditches, was imposed upon the counties, because counties were corporations within the meaning of that word as used in the drainage laws. Thereupon the General Assembly of 1913 undertook a revision

of the drainage laws. In so doing it adopted as Section 30 of the Act of 1913 all that part of Section 5513, supra, beginning with the words, "All bridges contemplated by this section," thence to and including the words "twenty days actual notice of the time and place of letting such work." A few slight changes in verbiage are made, but none which affects the question here involved. The Legislature then added the following clause, which did not appear in the statutes of 1909, to-wit:

"Within ten days after a dredge boat or any other excavating machine shall have completed a ditch across any public highway, a bridge shall be constructed and maintained over such drainage ditch where the same crosses such highway; *Provided, however, the word corporation as used in this section shall not apply to counties.*"

Whether or not the General Assembly took cognizance of the decision of the Macon County Circuit Court in the Chariton Drainage District case, 252 Mo. 345, may admit of speculation, but that the addition to the drainage laws of the words last above quoted sweeps away the foundation upon which the decision of the Chariton Drainage Drainage District case was based, so far as the question here involved is concerned, is too plain for controversy. This amendment affects the decisions above cited in the Little River cases (269 Mo. 444 and 271 Mo. 429) in the same way, and to the same extent. Hence it becomes necessary to determine in the light of this amendment, upon whom now rests the burden of bridge building under the Act of 1913. At common law, that burden would rest upon the individual whose acts made the building of the bridge necessary. [Rex v. Lindsey, 14 East, (Eng.) 317; Rex v. Kerrison, 3 M. & S. (Eng.) 526; Penn. Railroad Co. v. Irwin, 85 Pa. St. 336; Richardson Co. v. Drainage Dist., 92 Neb. 776.] Numerous authorities to the same effect are collated in an exhaustive note upon the case last cited, in 31 Am. & Eng. Ann. Cases (1914A ), page 550.

Common Law,

As construed in the Chariton Drainage District case, supra, and in subsequent decisions, Article 1 of Chapter 41 (Drainage Statutes, R. S. Mo. 1909) the law imposed what this court felt to be a hardship upon the counties, but one which we could not avoid. Thus in the Chariton case, FARIS, J., speaking for this court, said:

"While it is regrettable that a studied effort seems to have been made to render this drainage statute vague and ambiguous upon the point of where the burden of bridge building lies and while the view we have heretofore taken and are now again forced to take, is fraught with hardships in this, and in other single instances, we can only repeat that the remedy lies with the Legislature and not with us. We construe the law; we do not make it." [269 Mo. l. c. 463.]

The vexatious vagueness of which the learned jurist there spoke is still as annoyingly persistent in the Act of 1913 as before. It seems that it would not have been a difficult matter to incorporate into this act a line saying in plain terms either that the county or the drainage district must build and pay for bridges, but that has not been done. We must construe the act as we find it.

Seeking the legislative meaning, then as in duty bound, as Job sought the grave, "diligently and with tears," we come to considerations which may be summed up thus: The drainage law as found in the Statutes of 1909 permitted a construction which placed the duty of building bridges over drainage ditches upon the counties. The trial courts so construed it—and correctly so construed it, as we held in the Chariton case, supra. This was felt to be a hardship, as was said by FARIS, J., in the paragraph which we have quoted. This paragraph though written subsequent to the Act of 1913, no doubt voiced a sentiment which had prevailed under the old law. The construction which caused this hardship was based, as we have said, upon an interpretation of the word corporation, as used in the drainage statute, as a word which included counties. The Legislature re-

vised the law and in substance and almost literally re-enacted the section which had been so construed. But in doing so, the Legislature said very clearly, that *"the word corporation as used in this section shall not apply to counties."* By this rule of construction we are bound, and if counties are not corporations within the meaning of that section, then there is no authority in the Act of 1913 for imposing the burden of the building of bridges upon counties. But Section 30 of the Act of 1913 provides that the bridges must be built. In the absence of a statutory declaration otherwise, the obligation to perform that duty would rest upon the drainage district under the common law, as we have said.

But Section 30 of the Act of 1913 contains a further clause, not found in the old law: "All drainage districts

Damages. shall have full authority to construct and maintain any ditch or lateral provided in its 'plan for reclamation' across any of the public highways of this State, *without proceedings for the condemnation of the same, or being liable for damages therefor."* If the duty of building and maintaining bridges across drainage ditches intersecting public highways devolves upon the drainage district to which such ditch belongs, then the wisdom and justice of this exemption from damages is apparent, for the building and maintenance of the bridge is a reparation of the damage inflicted by the digging of the ditch. But if the counties must build such bridges, then by this provision, the Legislature has conferred upon drainage districts an immunity which, so far as we are advised, it has granted to no other person, either natural or corporate. That one who, for his private ends, should dig a ditch across a public highway, would thereby incur a civil liability to the county for damages, seems quite plain. That the Legislature might properly fix the measure of damages in such a case, at the cost of building and maintaining a suitable bridge over such ditch, seems equally plain. But that the Legislature could, under Section 46 of Article 4 of our Con-

stitution, grant to certain classes of persons, natural or corporate, the right to dig innumerable ditches across the public highways of the State, and at the same time confer immunity from damages therefor, is a matter which might well be doubted, but which, though argued in the briefs in this case, we do not think it necessary to decide. The obvious purpose of the Legislature in saying in the Act of 1913 that counties should not, under that act, be considered to be corporations, was to relieve counties of the burden of building bridges over drainage ditches intersecting public highways. Since counties are not required to build these bridges, the drainage districts must do so. Furthermore, it seems essentially just that the burden of building bridges made necessary by the digging of drainage ditches should be borne by drainage districts. Drainage districts are, in a sense, public enterprises, and they have, very properly, been greatly encouraged in this State, but, in the last analysis, the benefits which flow from them are chiefly enjoyed by those who own the lands which the ditches drain. It is a matter of common knowledge that thousands of acres of once worthless swamp lands in this State have been transformed by these agencies into farming lands of the most extraordinary productiveness and value. The area of a drainage district may, and commonly does, form but a small fraction of the total area of the county or counties in which the district lies. In the instant case, it appears that the total area of the Medicine Creek Drainage District is but three per cent of the total area of Livingston County. Why should ninety-seven per cent of the lands of that county be taxed for the construction of bridges which are made necessary only by reason of a scheme for the improvement of the other three per cent? As a matter of abstract justice, it would seem that those for whose benefit the ditch is dug, should build the bridges thus made necessary. Upon this point we affirm the holding of the trial court.

II. Appellant asserts that the Act of 1913 nowhere confers upon drainage districts power to levy taxes or disburse funds for bridge building. To this contention we cannot agree. A contrary purpose is apparent in the act itself. Section 2 provides that the subscribers to the initial articles of agreement shall, in writing, "obligate themselves to pay the tax or taxes which may be assessed against their respective lands or other property to pay the expenses of organizing and of *making and maintaining the improvements* that may be necessary to effect the reclamation of said lands."

**Taxes for Bridges.**

Section 14 requires the commissioners provided for by the act, to "estimate the cost of works set out in 'the plan for reclamation,' which estimates shall include the cost of property acquired for rights of way, holding basins and *other works and damages*."

Section 18 empowers the supervisors to "levy a tax . . . to pay the costs of the completion of the *proposed works and improvements* as shown in said 'plan for reclamation,' and in carrying out the objects of said district."

Section 19 provides for the levy of a *maintenance* tax.

Section 26 empowers the supervisors "*to construct or enlarge or cause to be constructed and enlarged any and all bridges that may be needed in or out of said district across any drain, ditch, . . . or public highway*."

Section 30, from which we have heretofore quoted extensively as to matters pertinent in this case, is specifically devoted to bridges, and is naturally and properly to be construed, under the provisions of the Act of 1913, as imposing the duty of building bridges upon the district, as we have pointed out in a preceding paragraph.

Without prolonging this opinion unduly by a discussion of each section of this act, it will suffice to say that Sections 42, 43, 47 and other sections not herein specifically enumerated, contain additional grants of au-

thority, which in conjunction with those above mentioned, vest in the board ample power to build bridges, and for that purpose to levy taxes and disburse funds, as well as to do many other things. The Legislature can hardly be accused of parsimony in its grant of power to drainage districts, no matter what else may be said of this act. We rule this point against appellant.

III. Appellant claims that the general subject of building bridges is, by Article 3 of Chapter 102 of the Revised Statutes of 1909, confided to the counties, and that for that reason the Act of 1913 cannot be interpre-

Exception. ted to impose the duty of building a bridge upon a drainage district. The same contention was made and overruled in the Chariton case, supra, l. c. 362, wherein we said:

"It is a well known rule of statutory construction that 'where there are two acts and the provisions of one apply specially to a particular subject, which clearly includes the matter in question, and the other general in its terms, and such that, if standing alone it would include the same matter, and thus conflict with each other, then the former act must be taken as constituting an exception to the latter or general act, and not a repeal of the former.' [State ex inf. v. Amick, 247 Mo. 271, l. c. 292 and cases cited.] It is perfectly clear from reading Section 5513 of Article 1 of Chapter 41, Revised Statutes 1909, and Article 3 of Chapter 102, that the provisions of the former apply specially to those bridges which the board of engineers of drainage districts finds are necessary to be constructed in public highways where they cross ditches or canals of a drainage company, and by whom they must be built and paid for and that said Article 3 is general in its provisions governing the construction of bridges generally throughout the country, as well as the expenditure of the revenues of the county therefor, and is sufficiently broad, if standing alone, to embrace bridges to be constructed in public highways and across ditches of a drainage company; and if the former

is not to be construed to be an exception to the latter, then there would be a clear conflict between them; but since both acts stand *in pari materia,* we must interpret them together, according to the rule before stated, and when so done the legislative intention is clear, and we must hold that said section 5513 is an exception to the general provisions contained in Article 3 of Chapter 102, Revised Statutes 1909, and therefore, are not in conflict with each other, as contended for by counsel for respondents." [State ex rel. v. Chariton Drainage District, 252 Mo. 345, l. c. 363-364.]

The portion of Section 5513 referred to in the above excerpt has been reenacted as a part of Section 30 of the Act of 1913. We adhere to the ruling announced in the Chariton case.

IV. Appellant calls our attention to the fact that the judgment in this case provides that the bridge required to be built by appellant shall "be approved by the County engineer of Livingston County." The Act of 1913, Section 30, provides that "all bridges contemplated by this act . . . shall be built according to . . . plans, specifications and orders made or approved by the chief engineer of the district." In this particular the judgment of the trial court is erroneous. But we are not compelled to reverse and remand this cause merely for the correction of this error. We can and will enter the proper judgment here. [Sec. 2083, R. S. 1909; State ex rel. v. Trust Co., 209 Mo. 473.]

According to Engineer's Plan.

Appellant also presses upon our attention certain questions relating to procedure. We do not regard them as being vital. Particularly in matters of this sort, it is well to disregard technical distinctions—the "tithes of mint, anise and cummin"—and give heed to "the weightier matters of the law." It is better to drive at once to the heart of this case and decide it upon the merits, rather than to let the decision rest on more or less futile matters of procedure. We have consider$\kappa$

appellant's contentions relating to these matters, but we are not impressed by them, nor do we think it necessary to discuss them separately.

The conclusion of the whole matter is that the judgment below should be so modified as to require the appellant to construct the bridges in said judgment mentioned according to and in compliance with the plans, specifications and orders made or approved by the chief engineer of the appellant district, and said judgment should be further modified by omitting the provision therein requiring the approval of such bridges by the county engineer of Livingston County.

With these modifications, the judgment is affirmed. All concur.