C. W. DIEKROEGER, RESPONDENT, v. W. W. JONES ET AL., APPELLANTS.
—151 S. W. (2d) 691.

Kansas City Court of Appeals.  May 5, 1941.

Transferred from Supreme Court.

145 S. W. (2d) 435.

1118

*Livengood & Weightman* for respondent.

*A. F. Harvey* for appellants, Jones and Staples.

CAVE, J.—This is an appeal from the Circuit Court of Nodaway County. The action was begun by the plaintiff filing a petition in that court seeking to have the court compel defendants, W. W. Jones and

Lester O. Staples, as the only surviving members of the last board of supervisors, and as landowners representing a class, to levy certain drainage district taxes for the purpose of paying certain unpaid drainage district bonds, totalling approximately $3000. The defendants filed a demurrer to the amended petition which was overruled, and they then filed an answer which was a general denial. The cause was tried before the court and in due time judgment was rendered ordering the defendants, W. W. Jones and Lester O. Staples, "as the sole surviving members of the last Board of Supervisors of said Nodaway Drainage District No. 2 and constituting the Board of Supervisors of said district and the governing authority thereof," to forthwith levy, assess and cause to be collected taxes and assessments on and out of all the real estate located within said Nodaway District No. 2 against which benefits on account of improvements made in said district had been assessed, for the purpose of paying certain unpaid bonds and interest of said district.

From this judgment an appeal was taken to the Supreme Court of Missouri, which court has certified the cause to this court for decision, because no doubt, there were no constitutional questions properly raised or presented.

It appears from the record that on the first day of July, 1909, the Nodaway Drainage District No. 2 was incorporated by decree of the Circuit Court of Nodaway County for a period of twenty-five years, under what is known as the "Circuit Court Drainage Law." After the incorporation, the Board of Supervisors made a total tax levy, as required by Section 10759, Revised Statutes of Missouri, 1929, and filed the same in the office of the Recorder of Deeds of Nodaway County on July 16, 1910. The total assessment of all benefits as fixed by the original decree was $100,000. Against this amount, $75,000 worth of bonds were issued and sold on August 17, 1910. All of said bonds and interest thereon had been paid except those in controversy, which matured April 1, 1930.

At the time the Board of Supervisors, in conformity with the statute, filed with the Recorder of Deeds of Nodaway County a list of all taxes to be collected, it was provided and shown by the Resolution that said taxes were to be paid in twenty equal installments (Sec. 10760, R. S. Mo. 1929) and in such an amount as to pay all of the bonded indebtedness of said district. Among other things the Resolution contained the following:

"The said tax shall be payable in 20 annual installments, the amount of each installment will be determined and certified to the County Clerk of said Nodaway County not later than the 1st day of March of each year.

"The aforesaid tax is hereby declared a lien to which only the lien of the state for general, state, county, school and road taxes shall be paramount, upon all the lands herein and heretofore described. . . ."

The last payments made by the district on the bonds in dispute were in the year of 1932. The last annual installment levy was made in the year 1929, designed to pay bonds falling due April 1, 1930, which according to the statement made in the brief of the defendants "the Board members thought the amount was sufficient, together with the collection of back taxes, to pay the balance due on said bonds; and no further thought was given to the matter until some time after the death of the Secretary and Treasurer of the Board." The corporate charter of the Drainage District expired July 1, 1934, and the plaintiff purchased the bonds in controversy after that date and filed this suit on March 11, 1939.

Such other facts as are pertinent will be noted in the opinion.

In their Assignment of Errors, the appellants set out twelve grounds of error committed by the trial court, but some of these are apparently abandoned by the appellants in their argument and we will notice only those which are now urged.

It appears from the record that the defendants, W. W. Jones and Lester O. Staples are the only two living members of the last Board of Supervisors of this Drainage District.

The very heart of this controversy is: Can a court of equity compel the surviving members of the last Board of Supervisors of a drainage district to levy and collect taxes for the purpose of paying the remaining bonded indebtedness of the district after the life of the charter of incorporation has expired?

The appellants take the position that when the Legislature authorizes the creation of a drainage district for certain purposes and for a given length of time, and when that drainage district ceases to exist because of the expiration of its charter, it nor anyone for it has any right or authority to levy and collect taxes under the law, and that under such circumstances, the district itself is not subject to suit, directly or indirectly, and that the two men who were members of the last Board of Supervisors are helpless to do anything looking to the payment of these bonds or to the debts of the district; and that therefore a court of equity is powerless to compel them or the district to do so. The respondent takes the contrary view.

There is no statutory authority in the "circuit court drainage district law" specifically providing for the liquidation of the financial affairs of such a district when its charter expires, as in this case; and there is no Missouri case cited by appellants or respondent, nor have we found any, which directly discusses the situation confronting us.

Respondent asserts that the surviving supervisors of the last duly elected board are trustees or rather can be appointed trustees by the circuit court for the purpose of doing all things necessary, including the levying and collection of taxes, in order to pay the debts and complete the liquidation of the affairs of the defunct corporation; while the appellants contend that such surviving supervisors are with-

out power or authority to do anything toward the liquidation of the affairs of the defunct corporation, and that the courts cannot give them such authority or require the performance of the acts here sought to be required.

Our courts and the courts of other states, have frequently held that a drainage district such as we have here is, in many respects, a "municipal corporation;" a corporate subdivision of the State with the powers and authority, generally speaking, of such a subdivision as is conferred by statute. [Houck et al. v. Little River Drainage District, 248 Mo. 373; Mississippi & Fox River Dist. v. Ruddick, 64 S. W. (2d) 306; Bushnell v. Mississippi & Fox River Dist., 111 S. W. (2d) 946.]

Therefore, judicial decisions concerning somewhat similar situations as we have here relative to municipal corporations should be of aid in the solution of the problem presented.

A somewhat similar situation was discussed and decided by the Supreme Court of the State of Texas in the case of Payne v. First Nat'l Bank, 291 S. W. 209. In that case, the town of North Pleasanton was incorporated under the statutes of that State. In due time, warrants were issued by the governing authorities for certain municipal improvement purposes, and the warrants were sold to the public. Thereafter and before said warrants had been paid, a *quo warranto* proceeding was brought to test the validity of the incorporation of the town, and after a hearing the corporation was ordered dissolved, it never having been properly incorporated. Suit was brought by the holder of some of the warrants to compel the levying of the taxes for the payment of the same. The trial court denied the relief sought but the supreme court reversed that judgment with directions to the trial court to make the proper order for the levy. The pertinent part of that opinion which concerns us here is stated by the court as follows:

"At the time the *quo warranto* judgment was entered against the City of North Pleasanton and its officers, the Legislature had made no provision for the payment of the existing indebtedness of a dissolved *de facto* corporation. The legal effect of the *quo warranto* judgment, therefore, we to destroy the corporate existence of the city, and thereby strip its officers of all powers held by them under the corporation, *except such of those powers as are necessary for the protection and enforcement of the rights of the creditors of the corporation.*

"No other remedies having come into existence subsequent to the dissolution, these residuary powers, at the time of the trial of the present case, remained unimpaired in the officers who held them when the corporation was dissolved, and such officers, as trustees for the purpose, were required to exercise such powers for the use and

benefit of the creditors of the defunct corporation, in the same mode and with the same effect as if the corporation still subsisted.''

We also find that the author of McQuillen on Municipal Corporations, Volume 1, Section 326, Second Edition, announces the majority rule in this country concerning the principle here involved substantially as follows:

''Under the ancient English common law, in the event of the dissolution or civil death of a corporation, its personal property vests in the king, all its real estate remaining unsold reverts to the original grantor or his heirs, and the debts due to and from the extinct corporation are wiped out. . . . But most of our courts have so often repudiated this odious rule, that now it is believed to be entirely obsolete. By virtue of the clauses in the federal and state constitutions forbidding the impairment of the obligations of contracts, either directly or indirectly, by legislative act or otherwise, all contracts by virtue of the force of organic law, survive the dissolution, and creditors may enforce their claims in any mode permitted by law.

''Many statutes provide for the satisfaction of debts, the enforcement of contract obligations, and the winding up of the affairs of the dissolved corporation. But in the absence of statute, according to the just rule of the modern adjudications, both federal and state, a court of equity will now lay hold of the property of the extinct corporation, and administer it for the benefit of its creditors and stockholders. . . . This well settled rule, relating to private corporations, applies with like force to municipal corporations.''

Therefore, under such a doctrine a corporation, whether it be a private or public corporation, cannot avoid the payment of its legal obligations by permitting its charter to expire or be forfeited.

In the case of Von Hoffman v. City of Quincy, 4 Wall. 535, 554, the Supreme Court of the United States declares a principle of law which we think has a direct bearing on the solution of the issues here involved. The court said:

''It is equally clear that where a State has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The State and the corporation in such cases, are equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute; and neither the State nor the corporation can any more impair the obligation of the contract in this way than in any other.''

Adhering to that principle, the Court ordered the officers of the City of Quincy to levy the taxes necessary to pay the particular bonds there involved. To like effect is the ruling in the case of the City of Fort Madison v. Fort Madison Water Company, 134 Fed. 214.

The appellant very ably argues that a court of equity has no power or authority to levy or collect taxes, and cites authorities to support that proposition. However, that is not the point in this case and is not the relief sought or given. The judgment herein ordered the surviving supervisors to perform an act which it was their statutory duty to have performed before the corporate charter expired, but which they had failed to do. And they were ordered to perform it in the same manner they would and should have done had they acted before the charter expired. The court in this case is not levying taxes. It is merely compelling the surviving supervisors to perform a duty which the board should have performed prior to the expiration of the charter of the corporation.

The appellants also contend that the general tax levy made by the original Board of Supervisors in 1910 for the purpose of paying all outstanding bonds and interest lapsed on July 1, 1934, at the time the drainage district ceased to exist as a corporation, and is not a lien on any property in the district. While it is not necessary for us to decide that question, we do observe that the general levy made by the board in 1910 for the purpose of paying the bonds and interest is declared a lien upon all lands against which such tax shall be levied. [Section 5523, R. S. Mo. 1909; now sec. 12345, R. S. 1939.] But the authority of the court to compel the surviving supervisors to perform the duty herein sought does not depend on the question of an existing tax lien.

The record shows that the original assessment and levy made in 1910 was sufficient to pay all bonds and interest. This was the levy authorized and required by Section 12340, Revised Statutes 1939. After that general or total levy has been made and certified as required, then Section 12341, Revised Statutes 1939, requires the supervisors to "determine, order and levy the amount of the annual installment of the total taxes levied under the preceding section. . . ." This the supervisors did not do in sufficient amount to pay these bonds and the court is now ordering them to do so.

We believe the Supreme Court approached the solution of our problem here in the case of State ex rel. v. Holt County Court, 135 Mo. 533, wherein the court on page 544 of the opinion stated the contentions of the defendant in that case in the following language:

"Defendant's next contention is, that, as it was shown by the evidence that many of the owners of lands reported benefited by the construction of the drain ditch petitioned for, have paid all the tax due from them, and others have failed and refused to pay said tax, while still other lands have been sold under execution upon tax judgments for said tax and the taxes realized from such sales, all the lands cannot now be retaxed under such conditions, and that the court has no power to make any further levy;" and then on page 546 of the opinion, the court answered that contention as follows:

"All the lands benefited can be retaxed whenever it appears that previous assessments are insufficient. Even if the assessment in the first instance was sufficient, if collected, to pay the cash in full, for said improvements, yet if after the allowance of a reasonable time for the collection from delinquents, a deficiency exists, and the legal remedies have been exhausted for the collection of taxes, or if the assessments made have been abandoned or remain uncollected, by the authorities having the matter of the collection in charge, the writ should be granted ordering an additional assessment."

As we have said, under the statutes pertaining to drainage districts organized by the circuit court and particularly Section 12340, Revised Statutes Missouri, 1939, it was the duty of the Board of Supervisors to levy an annual installment tax until all the bonds and indebtedness were paid in full, and if the total levy proved insufficient for this purpose, then they were authorized to make additional levies. The evidence in this case shows that the Board failed to fully comply with the provisions of the statutes. The annual installment levies may have been sufficient if all the taxes had been collected, but such was not the case, and for that reason the district did not have sufficient money to pay all outstanding bonds and failed to make any additional levy for that purpose. The object of this suit is to compel the only surviving supervisors to make the very additional levy which they were authorized and required to make under the statute in order to pay the outstanding obligations of the district.

We adhere to the doctrine announced by the Supreme Court of Texas that certain residuary powers remained unimpaired in the supervisors when the charter expired and that the court can compel them to perform the duties laid upon them by statute, even though the charter has expired.

Appellants' argument that the action of the trial court was in violation of the Fourteenth Amendment to the Constitution of the United States and Section 30 of Article 2 of the Constitution of Missouri, passes out of the case because such issues were not properly raised by the pleadings or preserved in the record.

Appellants argue that even though the supervisors failed to levy a sufficient tax to pay any remaining indebtedness, nevertheless the holder of the bonds had sufficient time before the charter expired, to compel the levy of the tax or the payment of his bonds. The answer to that contention is that the pleadings do not raise any question of estoppel or laches.

The appellants cite the case of Taylor v. Fontaine, 10 S. W. (2d) 68, but an examination of the case will show it is no authority on the matter under consideration.

Much of appellants' able argument and cases cited deal with the powers of courts to levy taxes, but as we have above pointed out the

trial court did not undertake to levy a tax, it merely ordered the surviving supervisors to perform a statutory duty in conformity with the statute.

Finding no error in the record as presented, the judgment should be affirmed. It is so ordered. All concur.