STATE EX REL. A. B. WALKER, Prosecuting Attorney of Sullivan County, Missouri, and R. LEROY MILLER, Prosecuting Attorney of Grundy County, Missouri, Appellants, v. THE BIG MEDICINE DRAINAGE DISTRICT No. 1 OF SULLIVAN AND GRUNDY COUNTIES, Missouri, a Corporation, and E. C. PETTY, GIRD McCULLOUGH, U. G. HUMPHREYS, and GEORGE KENT as Surviving Members of the last Board of Supervisors of said Drainage District.—No. 39735. —196 S. W. (2d) 254.

Division One, September 9, 1946.

*A. B. Walker* and *R. Leroy Miller* for appellants.

*Paul D. Kitt* and *Randall R. Kitt* for respondents.

416

VAN OSDOL, C.—Relators-plaintiffs seek a mandatory injunction ordering defendants, surviving members of the last regularly elected Board of Supervisors of The Big Medicine Drainage District No. 1 of Sullivan and Grundy Counties, to rebuild and repair bridges and approaches thereto at points where the district's drain-

age ditch intersects public highways in the counties and to make the levy of taxes necessary for the rebuilding and repair. It was alleged by relators-plaintiffs that the necessary reconstruction and repair of the bridges and their approaches will cost approximately $18,000. The trial court sustained defendants' motion to dismiss the petition and, relators-plaintiffs having declined to further plead, judgment was rendered for defendants.

Some further allegations of the petition are as follows—The Big Medicine Drainage District No. 1 of Sullivan and Grundy Counties (hereinafter referred to as District) was incorporated in the Circuit Court of Sullivan County on January 6, 1920, for a term of twenty-five years or until January 6, 1945, for the purpose of reclaiming swamp, wet or overflowed lands. Pursuant to its adopted plan of reclamation, District excavated a ditch known as The Big Medicine Drainage Ditch which cut through the roadbeds and the rights of way of six public highways, five in Sullivan and one in Grundy County. Water runnnig through the ditch and across the roads has eroded and washed the soil from the banks of the ditch and has caused the channel to be greatly enlarged. District's plan of reclamation contemplated the flow of water through the ditch would wash the soil from the banks and enlarge the channel of the ditch. The bridges constructed by District are now old, defective and insufficient, are not in a reasonable state of repair, are dangerous to the traveling public, and constitute an obstruction of the public highways at the points of intersection; it was the common law obligation of District as well as its statutory duty to construct and maintain the bridges and their approaches and keep them in a reasonable state of repair, and at the expense of District, which duty District has refused to perform; District and defendants have refused to pay the expense or to levy a tax for the purpose, and seek to escape the obligation upon the theory that the corporate existence of District would (January 6, 1945) expire; immediately after defendants' declaration of refusal, the County Courts of Sullivan and Grundy Counties caused the institution of this action (December 29, 1944) prior to the expiration of the corporate life of District; at and prior to the time of the expiration of District's corporate existence, its board of supervisors, including defendants, knew the bridges were not sufficient and knew they were not in a reasonable state of repair; and, if defendants are not required to make the necessary reconstruction and repairs, Sullivan and Grundy Counties will be compelled to do so at the expense of the counties.

As we have said, the trial court sustained defendants' motion to dismiss the petition. The motion stated as grounds for dismissal—the petition fails to state a claim upon which relief can be granted; this court has no jurisdiction of the subject matter; there was no duty or obligation of District to maintain the bridges; and, if this

court has jurisdiction of the subject matter, relators-plaintiffs have a remedy, mandamus, under the provisions of Section 12475 R. S. 1939, Mo. R. S. A. sec. 12475.

When District was incorporated and the drainage ditch excavated, the obligation to construct bridges under the Act of 1913 (Laws of Missouri 1913, p. 232 et seq.; Section 4378 et seq. R. S. 1919) was that of District, quite as at common law. State ex rel. Ashby v. Medicine Creek Drainage Dist., 284 Mo. 636, 224 S. W. 343. It was provided in Section 30 of the Act, Laws of Missouri 1913, p. 251; Section 4406 R. S. 1919, as it now is provided in Section 12354 R. S. 1939, Mo. R. S. A. sec. 12354, that all drainage districts ''shall have full authority to construct and maintain any ditch or lateral provided in its 'plan for reclamation,' across any of the public highways of this state, without proceedings for the condemnation ▇▇▇ of the same, or being liable for damages therefor.'' This court (in State ex rel. Ashby v. Medicine Creek Drainage Dist., supra) in discussing this clause, which was not to be found in the law prior to the Act of 1913, remarked that, if the duty of building and maintaining bridges across drainage ditches intersecting public highways devolves upon the drainage district, the wisdom and justice of this exemption from damages is apparent, for the building and maintenance of the bridge is a reparation of the damages inflicted by the digging of the ditch. The court further remarked that drainage districts are, in a sense, public enterprises and have transformed thousands of acres of worthless lands into farming lands of the most extraordinary productiveness and value; but in the last analysis, the benefits which flow from them are chiefly enjoyed by those who own the lands the ditches drain. And the court in ruling the case in view of the clause of Section 30, quoted supra, and in view of the further and concluding clause of the same section (''*Provided, however,* the word corporation as used in this section shall not apply to counties'') held that the *drainage district* had the obligation of building bridges; and, as we have noticed, the obligation of the drainage district to maintain such bridges is recognized in the decision. Since the enactment of the Act of 1913, this court has ''uniformly held that bridges over drainage ditches must be built by the districts and not by the counties.'' State ex rel. St. Louis County v. St. Johns-Overland Sanitary Sewer Dist., 353 Mo. 974 at page 978, 185 S. W. 2d 780 at page 782. In the case of State ex rel. Chamberlin v. Grand River Drainage Dist. of Cass and Bates Counties, 311 Mo. 309, 278 S. W. 388, it was squarely held that drainage districts organized under the Act of 1913 not only have the obligation to construct bridges over ditches (through public highways) when excavated, but they also are required to maintain them, to renew and enlarge them when necessary, and to keep them in repair. That is, the districts are to construct sufficient bridges and keep them sufficient and in a reasonable state of repair.

Section 30 of the Act of 1913, supra, was repealed and a new section enacted in lieu thereof (in effect, an amendment) in the year 1929. The concluding sentence of the repealed Section 30 had read, in part, "Within ten days after a dredge boat or any other excavating machine shall have completed a ditch across any public highway, a bridge shall be constructed and maintained over such drainage ditch where the same crosses such highway . . ." The new section enacted in 1929 now reads, in part, "Within ten days after a dredge boat or any other excavating machine shall have completed a ditch across any public highway, a bridge adjudged sufficient by the county court of said county or counties shall be constructed over such drainage ditch where the same crosses such highway, and after such bridge has been constructed it shall become a part of the road over which it is constructed and shall be maintained by the authority authorized by law to maintain the road of which it becomes a part. If said bridge has been constructed by the drainage district and has become a part of said road and is then destroyed the authorities having control of the road are authorized, if they desire, to reconstruct such bridge . . ." Laws of Missouri 1929, p. 183; Section 12354 R. S. 1939, Mo. R. S. A. sec. 12354.

Defendants (respondents) contend that District, since the Amendment of 1929, has had no obligation to maintain the bridges of District; that the legislature had the authority to put the maintenance of the bridges on any subdivision of the state; could change the law at any time, and did change the law in 1929, placing the burden on such (other) subdivision of the state it saw fit; and that the amendment is not retroactive, but puts the burden of maintenance of District's bridges (from and after the time of the amendment) upon the authorities authorized by law to maintain the roads, although District was incorporated, its ditch excavated and its bridges constructed prior to the amendment's adoption. On the other hand it is contended by relators-plaintiffs (appellants) that, if the statute as re-enacted be given the constructions of releasing District's obligation to maintain the bridges and of placing the obligation of maintenance on the authorities authorized by law to maintain the roads, the section (in the respect it was changed when amended) is unconstitutional because, relators-plaintiffs say, it, if so construed, is retrospective in its operation and impairs the obligation of contract (Section 15, Article II, Constitution of Missouri 1875; and Section 13, Article I, Constitution of Missouri 1945); releases, without consideration, an obligation of a corporation due the county (Section 51, Article IV, Constitution of Missouri 1875; and Subsection 5, Section 39, Article III, Constitution of Missouri 1945); and gives to District a special right, privilege or immunity (Subsection 26, Section 53, Article IV, Constitution of Missouri 1875; Subsection 28, Section 40, Article III, Constitution of

Missouri 1945). It is unnecessary to particularly examine these contentions of the parties.

The plain language of the statute shows the legislature intended the effect of the amendment to apply only to bridges adjudged sufficient by the county courts. At the time District was organized, its ditches excavated and its bridges constructed, the bridges contemplated by the Act of 1913 were to be built in accordance with plans and specifications made or approved by the *chief engineer of the district.* See again Section 30, Act of 1913, supra. The Amendment of 1929 contemplates the bridges (which may become a part of the road and are to be maintained by the authority authorized to maintain the road) are those bridges which, although built in accordance with plans and specifications of the chief engineer of the district, are additionally *adjudged sufficient by the county courts.* Now, when District's ditch was excavated and the bridges constructed, the county courts were not vested with the authority and the responsibility of determining the sufficiency of District's bridges; and it is to be reasonably inferred from the allegations of the petition that District's bridges have not (since the Amendment of 1929) been adjudged sufficient by the county courts.

The amendment, we believe, evidences a transition of policy. Although requiring, as before, the bridges to be constructed by the district when its ditches are excavated through public highways (because ditches excavated through public highways by the district make the construction of bridges necessary) the legislature now, since 1929, desires, we believe, to recognize the benefit accruing to the public (due to the reclamation of swamp, wet or overflowed lands and their transformation to productivity) to the extent that it has balanced the benefit against the maintenance of bridges, making the maintenance the obligation of the public. However, it is emphasized that under the reenacted statute (Section 12354, supra) such bridges, the maintenance of which may become the obligation of the authorities authorized to maintain the roads, are *sufficient* bridges—bridges which are *adjudged sufficient* by the county courts. In this wise the authorities authorized to maintain the roads, although obligated to undertake the maintenance of bridges adjudged sufficient, were to be and are protected from the burden, never intended by the legislature, of maintenance and repair, and reconstruction, of insufficient bridges. We have not found in any statute an evidence of the legislative intent that the maintenance of a drainage district's insufficient bridges should be undertaken by any public road maintaining authority. In our opinion the statute (Section 12354, supra) in the respect it was amended in 1929 is not applicable, under the facts, to District's bridges —bridges admittedly unsafe, defective, insufficient and out of repair when District's charter expired—bridges which were not, when constructed nor thereafter, found sufficient by a county court, and which

bridges, consequently, have never become parts of the roads on which they were constructed, and the maintenance of which bridges, consequently, has never become the obligation of any other than District.

It is plainly inferred from the facts pleaded and admitted that, while District's bridges may have been adequate to span the width of the ditch as originally excavated and they may have then been safe, substantial and of type and width adapted to the needs of the traveling public, yet they were inadequate to span that broadening of the ▊▊▊▊ channel of the ditch which was contemplated by District's plan of reclamation. But the bridges were not kept sufficient, and they (and their approaches) are not now (at the time District's charter expired) sufficient and in repair. They are admittedly old, defective, insufficient, are not in a reasonable state of repair, are dangerous to the traveling public, and constitute obstructions of the highways. Since District had the obligation to construct and maintain sufficient bridges and keep them in a reasonable state of repair, and its bridges were not kept sufficient and in a reasonable state of repair and until District's charter expired, District had not, when its charter expired, made reparation for the damage it had inflicted in digging its ditch across the public highways.

But defendants contend a court is without jurisdiction or power to direct defendants to levy a tax to reconstruct and repair District's bridges inasmuch as the term of District's corporate existence has expired; it is said there is no statute authorizing a tax levy after the corporate charter of a drainage district has expired. We are reminded that the power of taxation is exclusively a legislative function, and that a court, absent a statute authorizing the tax, has no power to order a tax to be levied and collected—no statute, no tax. Would a court of equity be levying a tax if it were to order the defendants to perform a statutory duty to levy taxes which they as a board of supervisors, before the charter's expiration, had the power and were under the law bound to perform?

The Kansas City Court of Appeals has had the task of answering a like question in connection with unpaid bonds of a drainage district; that is, the question of the power of a court of equity to compel the surviving members of the last board of supervisors of a drainage district to levy taxes, after the charter of incorporation has expired, to pay the drainage bonds and interest thereon. See Diekroeger v. Jones, 235 Mo. App. 1117, 151 S. W. 2d 691. No really decisive difference is seen between the obligation of District, under the law, to construct and maintain District's works and improvements, of which its bridges are a part, and the obligation of a drainage district to retire its bonds. And no decisive difference is seen between the statutory powers and duties of the respective boards of supervisors prior to the expiration of the respective districts' charters to levy taxes to fulfill the respective obligations. Sections 12340, 12341 and

12370 R. S. 1939, Mo. R. S. A. secs. 12340, 12341 and 12370; State ex rel. Chamberlin v. Grand River Drainage Dist. of Cass and Bates Counties, supra; Graves v. Little Tarkio Drainage Dist. No. 1, 345 Mo. 557, 134 S. W. 2d 70. Of course, the drainage district's obligation in the Diekroeger case was to a private person, a creditor, the owner of the bonds; and District's obligation was to the public.

The obligation of District to the public to maintain sufficient bridges in a reasonable state of repair had not been fulfilled at the time of the expiration of its charter, nor was the obligation fulfilled or satisfied by the expiration of the charter. It would not be right that the public should be deprived of the reparation due it, resultant of District's damage to the public highways in excavating its ditch in the consummation of its plan of reclamation, merely because of the expiration of the charter, or merely because District's supervisors had failed to perform their statutory duties to levy taxes to satisfy District's obligation, though District's charter has now expired. Is there not now still reposed in them, the surviving members of the last board of supervisors, as trustees to the public use, the power and enforceable duty to do the same things to meet District's unfulfilled obligation and in the same manner as they, as a board before the charter's expiration, under statute could and should have done?

In deciding the Diekroeger case the Kansas City Court of Appeals leaned heavily on the case of Payne v. First National Bank of Columbus, Ohio, Tex. Com. App., 291 S. W. 209. Defendants herein have undertaken to point out that the Kansas City Court of Appeals failed to notice that the basis of the decision of the Payne case was, defendants herein say, a statute implementing the winding up of a municipal corporation's affairs after dissolution, which statute provided for the levy of taxes (for the purpose of paying indebtedness outstanding) by those persons who were the officers of the corporation at the time of its dissolution. Examining the Payne case, it will be noticed the statute, said to be the basis of the decision, was enacted *subsequently* to the trial of the issues in the lower court. It seems to us the reviewing court held that, after the municipal corporation was dissolved, such residuary powers and duties as were necessary for the enforcement of the rights of the corporation's creditors remained unimpaired in the officers who held the powers and duties when the corporation was dissolved, and such officers, as trustees, after the dissolution and in the absence of statute, could and should have been required by the lower court to exercise the powers and perform the duties for the use and benefit of the creditors of the defendant corporation in the same mode and with the same effect as if the corporation still subsisted. But the reviewing court was of the opinion that such residuary powers and enforceable duties had been, since the trial of the cause, deposited by force of the statute in the former officers of the corporation as trustees. But whatever be the correct analysis

of the Payne opinion with reference to the basis of the decision, we believe the principles announced by the Kansas City Court of Appeals in the Diekroeger case are right and just, namely, the principles that a drainage district cannot avoid the payment of its legal obligations by permitting its charter to expire; that, after the charter's expiration, certain residuary powers remained unimpaired in the surviving supervisors to perform duties imposed upon them by statute, with respect to such indebtedness, which they could and should have performed prior to the expiration of the charter; that a court of equity has the power to enforce the performance of these duties by the surviving supervisors, as trustees, and in the same manner as they would and should have performed the duties, as a board, prior to the expiration of the charter; and that a court of equity in the enforcement of such performance of a statutory duty to levy taxes to pay the indebtedness is not levying taxes—it is merely compelling the surviving supervisors to perform a duty which the board should have performed prior to the expiration of the charter. We hold that the principles so announced are applicable and with like effect to defendants' duties, under the facts of our case, to make District's bridges sufficient and put them in a reasonable state of repair, and to levy and cause necessary taxes to be collected for the purpose.

Defendants urge that allegations of the petition, as a matter of law, conclusively demonstrate relators-plaintiffs have been guilty of laches and their relief consequently barred. It is argued that the delay of relators-plaintiffs in instituting the action until the corporate life of District had all but expired has caused the burden of the litigation to fall upon defendants to their prejudice, the charter now having expired. Lapse of time does not in itself constitute, but is an essential element of laches. Harrell v. Surface, Mo. Sup., 190 S. W. 2d 939; Vol. 30 C. J. S., Equity, sec. 116, p. 531. District's obligation to keep its bridges sufficient and in a reasonable state of repair was a continuing one, requiring District to have its bridges sufficient and in a reasonable state of repair at the time its charter expired. No time elapsed after the expiration of the charter and before the pendency of this action. The action had been instituted and was pending when the charter expired.

Concerning defendants' contention that mandamus as provided by Section 12475, supra, is the remedy of which relators-plaintiffs should have availed themselves, it will be seen that mandamus has not been considered an exclusive remedy, even in cases where the drainage districts still existed as corporate entities. State ex rel. Chamberlin v. Grand River Drainage Dist. of Cass and Bates Counties, supra; State ex rel. Ashby v. Medicine Creek Drainage Dist., supra. See also Camden Special Road Dist. v. Willow Drainage Dist., Mo. App., 199 S. W. 716. The facts of the case at bar as pleaded have invoked principles peculiarly within the province of a court of equity;

and a mandatory order and decree directed to the surviving former members of the board, as trustees, to compel the performance of their duties is the relief which would not be improperly sought by relators-plaintiffs. Diekroeger v. Jones, supra.

The judgment for defendants should be reversed, and the cause remanded.

It is so ordered. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.