McFAW LAND COMPANY, a Missouri Corporation, Appellant, v. KANSAS CITY TITLE & TRUST COMPANY and KANSAS CITY TITLE INSURANCE COMPANY, Missouri Corporations.—No. 40354.—211 S. W. (2d) 44.

Division One, April 12, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, May 10, 1948.

*Martin J. O'Donnell* for appellant.

798

*Arthur N. Adams* and *Arthur N. Adams, Jr.,* for respondents.

[45] DALTON, C.—The second amended petition upon which this cause was tried contained three counts. (1) An action for damages for breach of an alleged contract of service (as abstracter and title examiner) requiring defendant to examine the official records of Stoddard County to ascertain the condition of the titles to described real estate in said county and to report the amount of all liens and encumbrances as shown by the official records of said county. This count was amended after trial and before judgment to plead fraudulent concealment and fraudulent representations and to include a prayer for $50,000 exemplary damages. (2) An action in equity to reform, on the ground of alleged fraud and mistake, an owner's policy of title insurance issued by defendant to plaintiff insuring the title to the described real estate (the purpose being to cancel an exception contained in the policy). (3) An action for $10,000 damages for breach of the terms of the title insurance policy as reformed, together with penalty for vexatious refusal to pay and for attorney fees. The three causes of action were tried to the court in one proceeding and the court found all issues on all counts for defendants. Plaintiff has appealed from the judgment entered on the court's findings.

We shall refer to plaintiff and its predecessors in interest as appellant and to defendant Kansas City Title & Trust Company [46] and its successor, Kansas City Title Insurance Company, as respondent.

Appellant was desirous of purchasing from the Commissioner of Insurance of the State of Colorado and Liquidator of the Pacific States Life Insurance Company some 27,000 acres of described real estate in Dunklin and Stoddard Counties, Missouri. On or about November 24, 1937, to facilitate such purchase, an application was made to respondent for a $100,000 guaranty policy of title insurance in usual form on the title to the real estate proposed to be purchased, title to be guaranteed in fee.

On November 24, 1937, respondent in reply to the application advised that its charge for the proposed policy (and a requested mortgagee's policy of title insurance for $75,000) would be $1200, including "all our expenses of examination of title from complete abstracts of title to said lands which are to be delivered to us by you or by your vendor and the expenses of our representative to and from the counties where the said lands lie." The letter further stated: "The issuance of any policy of title insurance herein provided for is expressly conditioned upon our approval of the title to be insured at the time when any such policy is to be issued."

The contract, which was ultimately entered into for the acquisition of the real estate, fixed the consideration at $60,000. Payment was to be made provided the respondent, "after examining the titles, agrees that when the sale is concluded it will issue to third party, or his nominee, an owner's title guaranty policy or policies; in a form satisfactory to third party, in the sum of not less than One Hundred Thousand Dollars ($100,000.00)." A Denver, Colorado, bank was named as escrow agent to hold the purchase money. The purchase contract further provided for "a marketable title" to be evidenced by abstracts of title to be furnished, and stated: "Whenever the steps necessary to vest in third party, or his nominee, such marketable title shall have been completed, and the said Title Company shall in writing notify the parties hereto of its willingness to issue said owner's title policies, then upon the direction of said Title Company the said escrow agent shall pay over to first party and second party the said escrow fund of Sixty Thousand Dollars ($60,000.00). . . . In the event the sale is concluded, all taxes and drainage assessments shall be adjusted as of December 31st, 1937 in the following manner: First party and second party shall pay to the respective county treasurers or collectors all general taxes assessed for 1936 and prior years and all drainage assessments becoming due and payable in 1937 or prior years, and the amount of the general taxes, assessed for the year 1937, becoming due in 1938, shall be ascertained, and deducted from the final installment of the purchase price." The date for adjustment was subsequently changed to March 1, 1939. A copy of the contract was delivered to respondent and respondent was directed "to close the deal" in accordance with the contract.

In its first report to appellant on the title to be insured, respondent stated: "We will issue our owner's and mortgagee's policies of title insurance thereon, in usual form, subject to the following exceptions: . . . 2. General taxes for the year 1938 and all subsequent years. . . . 6. All special assessments, or installments thereof, for drainage, ditch, levee, dike or road purposes or other public improvements, if any, which are not now due and payable. . . . 10. From the abstracts of title it would appear that premises in question are situated in the following drainage districts, towit: Mingo Drainage District, Drainage District #12, Drainage District #15, Drainage District #26. We should be furnished with a statement of the assessment against any of our lands in the respective drainage districts; the number of assessments into which said assessments are divided; the number of such assessments that have been paid and a statement of all such assessments that remain due and unpaid. We will except from the terms of our policy all assessments on account of drainage districts and ditches and the maintenance thereof for the year 1938 and subsequent."

On February 21, 1939, respondent wrote appellant: "We have now completed our [47] check of the records of the two counties with respect to the properties in question and we have extended our examination of the titles to said properties down to February 14, 1939, at 8:00 o'clock A. M., except . . . (exceptions noted). . . . With respect to the matters set forth in the two Title Reports above mentioned, you are advised that our policy or policies will make exception of all matters numbered 1, 2, 3, 4, 5 and 6 as now set forth in both of these reports. . . . Nos. 2 and 6 will be combined and will be changed to read as follows: General Taxes, including all annual assessments for drainage, ditch, levee, dike, road or other public improvement, or maintenance thereof, falling due in the year 1939 and subsequent years. . . . Nos. 9, 10 and 32 in Stoddard County report and No. 11 in Dunklin County report. All taxes and assessments due or payable in the year 1938 and prior years must be fully paid and satisfied and all suits in connection therewith must be dismissed and costs paid."

Before the purchase money was released, the respondent determined that the amount due for taxes and other items was $30,337.03, and this amount was paid by the vendor. Respondent understood that no payment of the purchase price was to be made until after the amount due for all outstanding liens, taxes and encumbrances had been paid by the vendor in accordance with appellant's contract. Appellant relied on respondent's report and advised the escrow agent to release the purchase money on March 27, 1939.

Respondent's policy of title insurance was issued April 21, 1939 and guaranteed fee simple title, except as to "estates, defects in the title, liens, charges and encumbrances against which the company does not guarantee," as follows: "2. General Taxes for the year 1939, and all subsequent years. . . . 7. All special assessments, or installments thereof, for the year 1939, and subsequent years on account of drainage ditches, levees, dikes, or road purposes or other improvements, if any."

Appellant's theory is that respondent was to insure the title as "free and clear from all kinds of encumbrances or liens whatsoever"; that the property was not free from liens and encumbrances; that the title insurance policy delivered by respondent contained a broader exception than the exception mentioned in the title report and subsequent letter of February 21, 1939; and that the policy excepted certain liens and encumbrances which should have been paid by the vendor. Appellant says there were outstanding liens and encumbrances against the property not reported to appellant, not required to be paid off by the vendor and not insured against by the policy issued by respondent. This contention is based on the following facts.

Drainage District No. 15 of Stoddard County was organized under and by virtue of Art. 4, Chap. 41, Secs. 5578-5635 R. S. 1909, by

order of the County Court of that county at the May term 1911, and the damages and benefits resulting from the proposed improvements were directed to be assessed. Such assessments were duly made. On March 4, 1912, the assessment of damages and benefits against the several tracts of land in the district was approved and confirmed. On April 20, 1912, the county court determined the cost of construction of the proposed improvements and the compensation and damages incident thereto to be $47,316.51 and ordered that an assessment for the payment thereof be levied and paid. The court fixed the amount of the assessments due and payable for each year against each tract of land, beginning in 1912 and ending in 1931, directed that the assessments be placed on the tax books against the land assessed and ordered that the assessments be extended annually until the whole amount thereof be paid. The exhibits indicate that the total amount assessed against each tract of land in the district approximately equalled the total amount of benefits assessed against each tract on account of the proposed improvements. Bonds were ordered issued and sold and it was further ordered that the bonds "shall be payable out of the moneys to be derived from the assessment made for that purpose and none other, on the lands assessed for the said drainage improvements . . . ." Sec. 5603 R. S. 1909. So far as this record [48] shows, no additional benefits were assessed against the described real estate, no additional drainage taxes were assessed and no new or further levies of assessments were made after 1931 and prior to August 3, 1939.

The bonds which the county court ordered issued and sold contained the following provision: "A special assessment of $47,316.61 was levied and apportioned by said court upon the lands of said district benefited and the payment thereof postponed on April 20th, 1912. No part of said assessment has been paid and this bond is a lien thereon and shall be paid out of the moneys derived from the assessment made for that purpose upon said lands. All acts necessary to be done precedent to and in the establishment of such district, the levying of said special assessment, the postponement of the payments thereof, the order for and the execution, issuing and delivery of this bond, have been done and performed in regular and due form as required by law; and said county of Stoddard hereby pledges to the holders hereof its good faith for the fulfillment of each and every official duty on its part concerning this bond and the coupons hereto attached."

At the time the contract for the purchase of the described real estate was closed, the purchase money released to the vendor and the title insurance policy issued to appellant some nine $500 drainage district bonds, with accumulated interest thereon, remained due and unpaid. Respondent did not make an investigation to determine the amount of outstanding due and unpaid bonds, or other indebtedness

of Drainage District No. 15, since drainage districts "usually have obligations, outstanding bonds or otherwise."

On August 3, 1939, the county court of Stoddard County entered the following order in the matter of Drainage District No. 15, towit, "that a levy of 10% of the original cost of construction be made, and it is hereby made upon the lands of said Drainage District No. 15 for the payment of the principal sum and interest on the outstanding bonds of said Drainage District No. 15 for the year 1939." Thereafter, on July 31, 1940, the said county court in the same matter entered an order as follows: "ordered that a levy of 5% of the original cost of construction be made, and it is hereby made upon the lands of said Drainage District No. 15 for the payment of the principal sum and interest on the outstanding bonds of said Drainage District No. 15 for the year 1940."

When appellant learned of these levies, it made demand on respondent to discharge the liens imposed by the levies and respondent denied liability. Appellant paid out $3,083.52, on November 29, 1940, and $1,355.85, on January 27, 1941, on account of these levies.

Although two of the causes of action stated in the second amended petition were at law and one was in equity, the causes were tried to the court in one proceeding without the aid of a jury. We shall review the case on appeal as one in equity, giving due deference to the findings of the trial court. Laws 1943, p. 353, 387, Sec. 114(d).

Appellant has made numerous assignments of error, which present only one essential issue. Appellant contends that the court erred in failing to reform the title policy by striking out exception 7, supra. Appellant insists that the exception was fraudulently inserted; and that respondent fraudulently caused appellant to pay out the $60,000 for the land and the $1200 to respondent for service and premium. Appellant says that respondent falsely represented that there were no liens and encumbrances burdening the title to said land and falsely promised that the combined exceptions mentioned in its letter of February 21, 1939 would be inserted in its policy.

Appellant further says that it relied upon its contracts with respondent "as an abstracter and insurer"; that it was "lulled to security by defendant's fraudulent representations"; that respondent caused appellant to pay out $60,000 "for lands with an encumbranced title"; and that appellant did not discover "the liens, encumbrances and charges on the land" until the 10% levy was made in August 1939, after appellant had paid for the land and had paid respondent's charges.

[49] Appellant insists that "the record of the county court (of Stoddard County) establishes that liens, encumbrances and charges in the form of special assessments and in the form of negotiable, unpaid bonds were outstanding and were charges on said lands from and after the day of the assessment (1912) and until they were paid

by plaintiff." Appellant contends that respondent was an agent of appellant and is liable for the negligent or wilful failure to find and report the unpaid bonds to appellant. Appellant says that "since 1913 the county court has had power, and it was its duty, to take such action, by levy or by a reassessment, as would be sufficient to enable it to pay and retire the outstanding delinquent bonds." Appellant cites State ex rel. Ross to Use of Drainage Dist. No. 8 Pemiscot Co. v. General American Life Ins. Co., 336 Mo. 829, 85 S. W. (2d) 68; State ex rel. Walker v. Big Medicine Drainage Dist. No. 1 of Sullivan and Grundy Counties, 355 Mo. 412, 196 S. W. (2d) 254, 258; Diekroeger v. Jones, 235 Mo. App. 1117, 151 S. W. (2d) 691; Drainage Dist. No. 29 Mississippi Co. ex rel. Gilmore v. Drinkwater, (Mo. App.), 140 S. W. (2d) 737; McWilliams v. Drainage Dist. No. 19 Caldwell Co., 204 Mo. App. 237, 224 S. W. 35; Murphy v. Dunklin Co., 17 Fed. Supp. 128; Drainage Dist. No. 4 v. Murphy, 119 Fed. (2d) 390; Bates County v. Wills, 239 Fed. 785 and 245 Fed. 556; Bates County v. Wills, 269 Fed. 734.

Appellant further contends that, since the records of the county court showed the unpaid bonds of the district and since it was the duty of the county court to re-assess to pay the unpaid bonds, respondent was liable to appellant for the amount paid out by appellant on the subsequent assessments. Appellant further insists that "under the facts and the law and the unquestioned evidence in writing plaintiff was entitled to judgment as a matter of law"; and that the court was without jurisdiction to render the judgment, as entered, because there was no evidence to sustain.

■ The one essential issue presented by this record is whether the effect of the unpaid bonds upon the title to the described real estate was within the exceptions provided in the contract under which appellant acquired title. That contract was conditioned upon respondent's agreement to issue "an owner's title guaranty policy or policies in a form satisfactory" to appellant and in a sum of not less than $100,000. The evidence shows that such an agreement was reached and the policy was issued. The contract of purchase further provided for a "marketable title," but with exceptions which included "all drainage assessments becoming due and payable" in 1938 and thereafter, and general taxes assessed in 1938 and becoming due and payable in the year 1939 and thereafter.

Should respondent have required the payment of the outstanding and unpaid bonds of Drainage District No. 15? The record presented shows that the real estate in question was *assessed* for certain drainage taxes in 1912, that is, the amount of the drainage taxes imposed against each tract was determined and the time for payment definitely fixed. These special assessments, so determined, were further subsequently *levied*, that is, an order was made for the payment and collection of these taxes. The special assessments were for the years

1912 to 1931, inclusive; and the assessments were ordered placed on the tax books against the land assessed and "extended annually." Sec. 5602 R. S. 1909. The amount of the special assessments against each tract approximately equaled the total *benefits* assessed against each tract. Each bond issued recited that it was *a lien upon the total special assessments* in the sum of $47,316.61 as made to pay the cost of the improvement. The special benefits assessed against the property and the special assessments of drainage taxes securing the bonds have been exhausted, that is, the special assessments have been levied and the drainage taxes collected or barred by limitations, the years for which the assessments were made have passed and the assessments are no longer effective. Sec. 5599 and 5600 R. S. 1909.

Appellant objected to oral evidence that the annual levies were paid by the landowners, but there is no contention that any drainage taxes based upon these special assessments, as made and levied for any [50] of the years 1912 to 1931, was due and unpaid. There were no special assessments for any years after 1931. Appellant does not contend that, when the land was acquired, it was subject to the lien of any unpaid drainage taxes. The method provided by statute for the enforcement of the liens of assessments and levies was by action on delinquent tax bills. Sec. 5600 R. S. 1909, Sec. 12417 R. S. 1939. Such taxes are barred by the statute of limitations in five years after delinquency. Sec. 1014 R. S. 1939. Drainage Dist. No. 1 of Bates Co. v. Bates Co., 269 Mo. 78, 91, 189 S. W. 1176; State ex rel. Davidson v. Missouri State Life Ins. Co., 228 Mo. App. 38, 65 S. W. (2d) 182.

As stated, it is appellant's theory that the unpaid bonds were liens, charges and encumbrances, which should have been paid off before the purchase was consummated. Appellant further contends the special assessments for the years 1912 to 1931, although long since levied, remained liens against the land and were not barred by any statute of limitations. Appellant says that there was no exception in the policy of future "levies for an old and existing encumbrance on the land known as the 1912 assessment for District 15"; that the exception in the policy "merely excepts assessments for 1939 and thereafter, but does not except the levies for 1939 and 1940 made to pay the 1912 assessment"; that the county court's order of August 3, 1939 was not an assessment but only a levy to give effect to the assessment of April 20, 1912; and that respondent was required to see that the land "was clear and free of all encumbrances and it overlooked an encumbrance created by the assessment of 1912 which was not fully paid."

We think the record satisfactorily establishes that the orders of the county court on August 3, 1939 and July 31, 1940 imposed new and additional assessments of drainage taxes on the property in the district. Sec. 12418 R. S. 1939. The orders determined the

amount of the tax and time for payment and further ordered the taxes levied and collected. The court did not purport to be making a second levy of any special assessment of drainage taxes previously assessed and subsequently levied for the years 1912 to 1931, and appellant suggests no statutory basis for such proceeding, if attempted. The record shows that all previous special assessments of drainage taxes had been levied and exhausted (whether the drainage taxes based thereon was paid or not), before the new and additional special assessments of 1939 and 1940 were made and levied. That there were no delinquent and unpaid drainage taxes when the deal was closed is in effect conceded.

The unsecured and unpaid bonds of the drainage district were not liens upon the land itself and never had been. Secs. 5699, 5600 and 5603 R. S. 1909; Sec. 12418 R. S. 1939. See, State ex rel. Sturdivant Bank v. Little River Drainage Dist., 334 Mo. 753, 68 S. W. (2d) 671. While the bonds stated that they were liens on the special assessments of drainage taxes for the years 1912 to 1931 inclusive, they were neither statutory nor common law liens on the land itself. Provision for payment had been made in accordance with the terms of the applicable statutes. The unpaid bonds were unsecured obligations of the drainage district and could only become a lien or charge upon the land or affect the title thereto by some future action of the county court in making new and additional assessments of drainage taxes and levying same against the land in the district. Respondent contends that the county court of Stoddard County had no power or authority to make the 1939 and 1940 special asessments and levies thereon. We need not determine that question because, whether the special assessments and levies of 1939 and 1940 were valid or invalid, they were future assessments and within the exceptions provided in appellant's contract for the purchase of the property. They were further within the exceptions provided by the written negotiations between appellant and respondent for the title insurance policy and they were within the exceptions provided by the terms of the policy itself. Respondent had no duty to require the unpaid bonds to be [51] paid by the vendor or to notify appellant thereof.

Appellant further contends that the exceptions mentioned in the policy of title insurance were without consideration and void. This contention is based upon the theory that there was a contract between the parties requiring ''the insurance of the title as in fee simple, and free from any liens and encumbrances.'' While there was some oral testimony in support of such a contract, the trial court rejected it in favor of the contract evidenced by the written documents. The policy, as written, conformed to the terms submitted. Appellant's rights were not affected by the changes in the language

used. There was never any agreement to insure the title in fee without exceptions.

We find no satisfactory evidence of fraud in this record, nor evidence of any facts or circumstances imposing upon respondent any duty to report to appellant or to advise appellant concerning the existence of matters which were excepted by appellant's contract to acquire the property. There was no duty on respondent to advise appellant concerning the extent or importance of matters which appellant knew were to be excluded when the policy of title insurance was issued. The evidence shows no relationship between the parties imposing upon respondent a duty to do more than to see that the terms of the contract to acquire the land were complied with and to advise appellant concerning the terms upon which respondent would issue its policy of title insurance. We find no evidence of negligence, carelessness or fraudulent concealment on the part of respondent.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by Dalton, C., is adopted as the opinion of the court. All the judges concur.